HUSBANDS
vs.
SMITH'S ADM'R.

---

## Husbands vs. Smith's Adm'r.

Case 43.

### ERROR TO M'CRACKEN CIRCUIT.

Commissioners of a board of internal improvement, authorized to control a fund for that purpose, contracted, in their own names, for the building of a bridge, which was received from the undertaker. *Held,* that although the funds on which they relied for discharging the contract was a public fund, and was lost to them without their fault, that they were individually liable; and that all were liable where the action was by the majority, as well those who agreed to the contract as those who did not.

October 8.

Judge CRENSHAW delivered the opinion of the court.

Case stated.

By an act of 1835, 3d *Statute Laws*, 287, the proceeds of the vacant lands west of the Tennessee river were appropriated to the counties of Calloway, Graves, Hickman, and McCracken for internal improvement purposes. Boards of commissioners were appointed in the several counties to superintend the application of their respective shares of the money to the building of bridges, &c., in said counties, and authority is given to the commissioners to let the public works in said county to the lowest bidder, &c.

The board of commissioners for McCracken county, consisting of J. B. Husbands and six others, made a

contract with Reuben E. Rowland to erect and build a bridge across Clark's river, for which they agreed to pay him $1,500. The bridge was built, and we think that, whether it was built according to the terms of the contract or not, the weight of the evidence is, that the work was accepted by the board, after an examination of it by two of their number; and the board, thereupon, through their clerk, drew two orders on their treasurer in favor of Rowland—one for three, and another for seven hundred dollars, being the balance due after what had already been paid. These orders were assigned by Rowland to Andrew Smith, and were protested by the treasurer, on presentment, for want of funds.

At the time the contract for building the bridge was made, the board it seems, had lent their funds then on hand, being $3,000 in Mississippi and Alabama bank paper, to Enders, Hynes, and others, to assist in the construction of a dry dock at Paducah.

At the time of the loan Husbands and four other members of the board, took the note of Enders, Hynes, &c., payable to them individually in nine months. The bank paper lent soon depreciated greatly in value, if it did not become worthless, and Enders, Hynes, &c., in consequence of the depreciation, refused to pay their note unless the board or payees would take the same or like depreciated paper. They declined to do this, but Enders, Hynes, &c., kept the paper lent, or similar funds in their iron safe, and paid, it seems, to the orders of the board some eight hundred dollars. A fire afterwards occurred in Paducah and the funds deposited in the iron safe were consumed. Suit was instituted against Enders, Hynes, &c., to recover the balance of the loan remaining due, which was defended, and was finally compromised by the payment to the board of $500. What was done with the sum received upon the compromise does not certainly appear, but there is nothing in the cause going to show that it was used by the board, or any of them, for any individual purpose. The funds, or the greater

part thereof, belonging to the board at the time of the contract, having been thus lost they declined to pay the amount of said orders, being the balance remaining due for the building of the bridge; and this suit was instituted by Smith, the assignee of the orders, against the members of the board, and he seeks to make them individually liable; and the main question in the cause is as to their individual liability.

The record does not show that, at the time of the contract, any thing was said as to the source from which payment was to be made. Nothing appears as having transpired at that time, except simply making of the contract with the commissioners for the building of the bridge, at the price of $1,500. It is insisted, however, that Rowland knew that the funds of the commissioners were in the hands of Enders, Hynes, &c., and that he must be regarded as looking to that fund, and any other that might come into their hands from sales of the vacant public lands for payment; and this source having failed without the fault of the commissioners, Rowland must abide the failure, and loose the price of his work and labor; that the commissioners were public officers, and, in their capacity as such the contract was made, and that they cannot be held responsible out of their individual means. It is by no means certain that Rowland knew, when he undertook to build the bridge, what disposition had been made of the funds, or what was the amount thereof; there is one witness who speaks of Rowland's knowledge as to the loan to Enders, Hynes, &c., at that time, but the manner in which this witness expresses himself upon that subject makes it very questionable in our minds whether he had such knowledge. But, if it were conceded that he had such knowledge, and that he then expected his remuneration for his labor to come from that, or other sources to be derived from the sales of the public lands, it by no means follows that the commissioners are not responsible to him in their individual capacities. The commissioners had employed him to

build the bridge, and promised to pay him therefor upon the completion of the work; they must be regarded as having determined, in their own minds, that their funds would be sufficient to meet the payment, and to have undertaken that it was, and would be sufficient for that purpose; they were the custodians of the fund, were the superintendents thereof, knew the probability of its being increased from the general source for internal improvement purposes, and they must be regarded as having hazarded the sufficiency of the means devoted to internal improvements to meet their undertaking, especially as they did not, in the contract, restrict Rowland to the sufficiency of this fund, or make any provision against their individual responsibility. We take it, that in the absence of any testimony to the contrary, Rowland must be considered as trusting to and confiding in the judgment of the commissioners as to the ability of the public fund to meet their engagements, and that they ought not to be exonerated upon the ground that their judgment was incorrect—they were, in our opinion, bound to know that the fund entrusted to their hands would be sufficient to enable them to comply with their contract, and they must abide the consequences when it has turned out to be insufficient.

If the commissioners are not responsible, Rowland's assignee is without any remedy whatever. The reasoning employed by this court in the case of *Guffield v. Town of Bowlinggreen*, 6 B. Monroe, 228, is applicable to this case, and shows the propriety and justice of holding the commissioners personally responsible; and the case of *Horsley v. Bell*, quoted in *Chitty on Contracts*, page 279, bears a striking analogy to this, and authorize the conclusion to which we have come. It is useless to remark upon the defectiveness of the work—the proof is sufficient to show that, however defective it may have been, it was received by the board as a compliance on the part of the undertaker with his contract, and it is now too late to object, and the commissioners being trustees of the internal improvement fund,

*Husbands vs. Smith's Adm'r.*

Commissioners of a board of internal improvement, authorized to control a fund for that purpose, contracted, in their own names, for the building of a bridge, which was secured from the undertaker. *Held*, that although the fund on which they relied for discharging the contract was a public fund, and was lost to them without their fault, that

and having acted in that capacity, and the bill asking an account of their expenditures as such, we think the chancellor had jurisdiction, notwithstanding they

are held individually responsible.

But the circuit court, although all the commissioners were made defendants and were served with process, rendered a decree against part of them only. This, we think, was unauthorized. We perceive no ground upon which any of the commissioners, or their representatives, can be exhonerated, it was a joint contract, they were all a board of commissioners for a particular purpose, and what was done by a majority of them as a board, must be regarded as having been done by all, although a minority may have been present, protesting against any particular order. The court, therefore, erred in exonerating a part of the commissioners from responsibility, except that, as to the defendant, Hardin, an abatement of the suit was entered by consent of parties, which must be considered as a dismissal as to him by consent.

Wherefore, for the error indicated only, the decree is reversed, and the cause remanded, for a decree in conformity to the principles of this opinion.

B. & J. MONROE and HUSBANDS for plaintiff; HARLAN for defendant.