# Stith et al. v. Powell, County Superintendent of Schools, et al.

(Decided Nov. 3, 1933.)

HARDIN, WALLS & WHITWORTH and WOODWARD, HAMILTON & HOBSON for appellants.

J. R. LAYMAN and W. R. GENTRY for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The primary question involved on this appeal is whether a county board of education may with or without reason refuse to elect principals, assistant principals, and teachers nominated by the county superintendent for county consolidated and high schools pursuant to authority vested in him by section 4399a-11 of Kentucky Statutes, and, if it may do so only for cause, then for what cause may it so refuse. Section 4399a-11 of the Statutes is section 11 of chapter 36 of the Acts of 1920. So far as pertinent, it reads:

"The county superintendent of schools shall nominate for appointment by the county board of education all principals, all assistant principals and teachers and shall assign them to the positions of principals, assistant principals and teachers of the various schools of the county; transfer them as the needs of the school require; recommend them for promotion; suspend them for cause and recommend them for dismissal."

Section 7 of chapter 36 of the Acts of 1920, which became section 4399a-7 of the 1922 Edition of the Statutes, in part provided:

"The county board of education shall appoint on the written recommendation of the county superintendent from a list of names submitted by him all principals, assistant principals and teachers and fix their salaries subject to the provisions of law."

It will be observed that in this act of 1920, section 7 laid down the duties of the county board when the county superintendent had made his written recommendations. The section provided that the county board "shall appoint" the nominees of the county superintendent. As we shall presently see, this provision did not take away all discretion from the county board, but it forbade a refusal without reason to elect the nominees of the county superintendent. Section 11 was simply the complement to section 7. It laid down the duties of the county superintendent, and in so doing provided that he "shall nominate for appointment by the county board of education all principals, all assistant principals and teachers." Both sections applied to "the various schools of the county." It is thus plain that the words in section 11, "for appointment by the county board of education," must be read in the light of the provision of the complementary section 7 of the act wherein the duty of the county board after the county superintendent had made his nominations was set out, from which it follows that the duty of the county board with reference to its appointing the nominees of the county superintendent under section 11 of the act was the duty enjoined upon it by section 7 of that act.

In 1924, section 7 of the act of 1920 was amended. See chapter 52 of the Acts of 1924 (section 3 [Ky. Stat. 1930, section 4399a-7]). As so often happens in the amending of statutes, a section of the statutes is amended without any consideration of how the amendment to such section will affect other sections of the statutes. It was the primary purpose of those seeking to amend section 7 of the act of 1920 to take away from the county superintendent the nomination of principals and teachers in rural schools where only common school branches are taught and usually called subdistrict schools, and to vest such nomination in the subdistrict trustee. The act of 1920 was accordingly amended by the act of 1924 to accomplish that purpose. However, the drafter of the act of 1924 ignored section 11 of the act of 1920, and it was left high and dry. Necessarily to the extent that the

1924 amendment to section 4399a-7 of the Statutes vested in the subdistrict trustee the nomination of principals and teachers in the rural schools covered by that amendment, the authority theretofore vested by section 4399a-11 of the Statutes in the county superintendent to nominate principals and teachers in all the schools of the county was curtailed. Except as so curtailed, the county superintendent still retained the right of appointment originally vested in him by this section of 4399a-11.

The duties of the county board under section 11 of the act with reference to such nominations as the county superintendent could make after the 1924 amendment to section 7 of the act of 1920 was passed remained undisturbed. Although not expressly stated in this section 4399a-11, they were, as we have seen, impliedly the same as the duties expressly set out in section 7 of the act as enacted in 1920. What were such duties? We have found no case construing this section 7 of the act of 1920 with reference to the duties of the county board as to nominations of teachers prior to the 1924 amendment. However, as we have seen, that amendment so far as pertinent to our present controversy simply took the right of nomination in certain cases away from the county superintendent and vested it in the subdistrict trustee. The duties of the county board, once a nomination was made, remained the same. Hence a construction of this section 4399a-7 as to the duties of the county board in acting on nominations of principals and teachers since the 1924 amendment is equally as applicable to that section before such amendment as it is after such amendment. Many such cases have been decided since the 1924 amendment to section 7 of the 1920 act construing its provisions with reference to the duty of the county board in acting on nominations of principals and teachers made by the subdistrict trustee. It is now settled that, while the county board has a discretion to determine whether a nominee possesses the necessary educational and moral qualifications for the position to which he has been nominated, Foreman v. Board of Education of Christian County, 219 Ky. 573, 293 S. W. 1058; yet if the nominee possess such qualifications, it is then the duty of the county board of education to elect him. County Board of Education of Muhlenberg County v. Weatherford, 241 Ky. 66, 43 S. W. (2d) 340; Board of

Education of Logan County v. Akers, 243 Ky. 177, 47 S. W. (2d) 1046.

Such being the construction placed on section 4399a-7 as to the duty of the county board in acting on nominations of principals and teachers since the 1924 amendment, and that amendment having, as we have seen, worked no change in the duty of the county board with reference to acting on nominations as that duty stood prior to the 1924 amendment, it follows that prior to 1924 it was the mandatory duty of the board to elect the nominees of the county superintendent if such nominees possessed the necessary moral and education qualifications, the discretion of the board being confined to the determination of such moral and educational fitness. As we have seen, this duty was expressly set out in section 7 of the act of 1920 and implied in section 11 of that act, the later section being affected by the 1924 amendment only to the extent to which the nominations of the county superintendent were curtailed. The duty of the board under section 11 of the 1920 act with reference to the issue under discussion was the same as such duty under section 7 of that act. Indeed, this must be so, for, were it otherwise, the county board by a continuous process of rejecting the nominations of the county superintendent could finally force him to nominate those really chosen by the county board. The 1920 act never meant to vest the county board with such right. It simply provided a check on the selections of the county superintendent to make sure that those nominated by him were educationally and morally qualified for their work. We are therefore of the opinion that, in passing on nominations made by the county superintendent under section 11 of the act of 1920, the county board has no right to capriciously or arbitrarily reject the nominees of the county superintendent, but is confined in its right of rejection to where it has in the sound exercise of its discretion determined that such nominees are either morally or educationally disqualified for the positions to which they have been nominated.

It is argued, however, that the cases of Floyd County Board of Education v. Hall, 242 Ky. 680, 47 S. W. (2d) 514, 515, and Johnson v. Elliott County Board of Education, 245 Ky. 834, 54 S. W. (2d) 382, 383, have established a different rule, and that the case of Rynerson v. Mercer County, 244 Ky. 292, 50 S. W. (2d) 567, is to

be distinguished. Taking up these cases chronologically, we find that the first one is the Hall Case. In that case Hall had been orally nominated by the county superintendent for the principalship of a school in consolidated school district No. 11 of Floyd county. The county board refused to elect him. After his rejection by the board, he was again nominated by the county superintendent, but his nomination was ignored by the board, and one Guard was employed by it as principal of the school in question. Hall thereupon brought suit to enjoin Guard from teaching the school and to enjoin the board from paying him the salary. The injunction granted by the lower court was dissolved by this court. In the opinion it was said that the case was governed by section 4399a-11 of the Statutes. After discussing section 4399a-7 of the Statutes, and especially the interpretation put upon it by this court on the duty of the county board to elect unless it determined within the right of its discretion that the teacher recommended was not qualified, this court pointed out that the important difference in phraseology of the two sections was the necessity of the nomination under section 4399a-7 being made by the subdistrict trustee and in writing, whereas under section 4399a-11 the nomination could be oral and was to be made by the county superintendent. We then said:

"We have in more cases than one held that, when the nomination is made as authorized by section 4399a-7, the board of education may determine his [the teacher's] qualifications when accepting the subdistrict trustee's nomination, and, if the nominee be rejected by it, it makes it the duty of the subdistrict trustee again to nominate a teacher as therein provided, and to continue so to do until one is employed by the board of education. There is no sound reason for giving to section 4399a-11 a different construction in this respect."

The court then said that, Town Hall having been nominated orally as the county superintendent had a right to do, "the county board of education was clothed with authority to reject the nomination to Town Hall, thus made." It is argued that this expression of the court means that the county board of education had the unfettered right to reject the nomination of Town Hall, but the opinion must be read as a whole, and this expression of the opinion must be read in the light of what

had been said before to the effect that there was no sound reason for giving to section 4399a-11 a different construction in this matter of the rejection of nominees for teachers than that given to section 4399a-7. As we have seen, and as that opinion itself points out, the right of the county board to reject under section 4399a-7 is confined to a rejection for lack of moral and educational qualifications so determined by the board acting within its sound discretion. The opinion in the Hall Case turned on whether, first, the county superintendent could make his nomination orally; and, secondly, whether there was any right of rejection in the county board. The opinion does not turn upon what was the character of the right of rejection the board had. Properly interpreted, the Hall Case is not in conflict with the construction we have given above to section 11 of the act of 1920.

In the Rynerson Case, after giving a history of various acts of the Legislature bearing on the appointment of teachers in these county schools, the opinion pointed out that the purpose of the Legislature in amending section 7 of the Act of 1920 was to give to the subdistrict trustees instead of the county superintendent the right to recommend teachers in the rural schools where only common school branches are taught, and that the amendment did not affect the existing right of the county superintendent to nominate principals and teachers in county high schools or in consolidated schools, and that, by leaving section 11 of the act of 1920 unchanged, the Legislature obviously intended that the county superintendent should continue to nominate teachers in the schools other than rural schools where only common school branches were taught. In that case, Rynerson not having been nominated by the county superintendent for the principalship of the Slavisa High School, it was held that the board was without authority to elect him. The Rynerson Case bears but little on our problem.

The last case cited is the Johnson Case. There, nominees of the county superintendent, concededly qualified educationally and morally, were rejected by the county board of education. On their renomination by the county superintendent, a meeting of the board was held and two of the members voted "Aye," one "No," and two responded, "Not voting." Contending that the

two members who had responded "not voting" must be held to have voted in the affirmative, thus making the vote 4 to 1 for confirmation, the nominees sought to enforce their alleged rights by injunctive processes. The opinion at its close says: "The appellants predicated their claims upon their election as teachers."

After pointing out why under the facts and circumstances of that case it was that the two members of the board who had responded "Not voting" could not be counted in the affirmative, the opinion then stated that the appellants were not entitled to the relief they sought because they were unable to show their election and they had predicated their case entirely on an election. The Johnson Case does not undertake to say what the rights of the appellees would have been had they sought to enforce a confirmation by the board of their nominations by the county superintendent or to say what right the county board had to reject such nominations. This resume of the cases cited establishes that this court has in no opinion taken the position as contended by the appellants to the effect that the county board may reject without reason or at least for any reason satisfactory to it a nomination of the county superintendent. The cases cited do not militate against the conclusion reached above that the county board of education has no authority to reject nominations made by the county superintendent save for lack of moral and educational qualifications on the part of such nominees as to which the county board has a sound discretion in the determination of such fitness. Applying the principles thus laid down, to the instant case, we find that it is conceded that the appellee Dowell, nominated by the county superintendent for the principalship of the Ekron Consolidated and High School, and the appellees Smith, Bennett, and Grinnell, nominated by the superintendent for teaching positions in the Ekron and Brandenburg Consolidated and High Schools, were morally and educationally qualified for the positions to which they had been respectively nominated, whence it follows that the county board of education was without authority to reject them. The lower court did not err in requiring the county board of education to elect these nominees to the position for which they were nominated by the county superintendent.

There is left to be decided the question raised by

the appellant O. L. Adams. He had been nominated by the county superintendent for the principalship of the Brandenburg Consolidated and High School. The minutes of the meeting of the board held on June 15, 1933, as drafted by the board's attorney on August 12, 1933, recite:

"It was moved and seconded that the minutes of June 15, 1933, be made to show that at the board meeting on said day Mr. Foushee moved to elect O. L. Adams as principal of the Brandenburg School explaining that the board's former action was induced by mistake and after said motion was seconded by Mr. Richardson, Mr. Powell said he desired to withdraw the nomination of Mr. Adams, and again nominated W. P. Board, whose nomination this board had theretofore rejected, and thereupon this board did, on June 15, elect O. L. Adams, principal of the Brandenburg Consolidated School."

That the county superintendent had the right to thus withdraw the nomination of Adams at a meeting of the board cannot be questioned. Cf. County Board of Education of Muhlenberg County v. Weatherford, supra. The withdrawal was made during a session of the board, and the withdrawal appears of record in the board's minutes. These minutes establish that, before the board voted on the nomination of Adams, it was informed by the county superintendent of his withdrawal of that nomination. The board having that information, it is not important that it did not receive such information in accordance with Roberts' Rules of Order or any other parliamentary guide. The important matter is that the board knew of the withdrawal. Adams having been elected without being nominated, his election was void, and hence he is not entitled to the injunctive relief here asked for by him to the effect that he be declared elected as principal of the Brandenburg Consolidated and High School. Rynerson v. Mercer County Board of Education, supra. The chancellor did not err in denying him such relief.

The judgment of the lower court being in accord with these views, it is affirmed.

Whole court sitting.