## Cottongim v. Stewart et al.

Feb. 7, 1939.

W. E. Begley, Judge.

H. H. OWENS and T. H. WEBB for appellant.

LUKER & BEGLEY and A. T. W. MANNING for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

We dispose of twenty-three appeals by teachers of Laurel County from adverse judgments in their several suits against members of the County Board of Education and numerous teachers seeking to have the court compel the Board to recognize their right, respectively, to teach in the schools of Laurel County during the term beginning July 18, 1938. The County is one district by virtue of consolidation and abolition of sub-districts according to the authority of Sections 4399-6 and 4399-20, Kentucky Statutes. County Board of Education of Bath County v. Goodpaster, 260 Ky. 198, 84 S. W. (2d)

55. Where that is the case the county superintendent is given authority to nominate the teachers and if it is done in accordance with the terms of the statute the board of education must consent to and approve those appointments unless substantial cause in each particular case be shown. The board has no right to reject them and elect others. Section 4399-9, Kentucky Statutes; Cartee v. Lewis County Board of Education, 242 Ky. 748, 47 S. W. (2d) 742; Stith v. Powell, 251 Ky. 155, 64 S. W. (2d) 491; Hudson v. Ohio County Board of Education, 253 Ky. 709, 70 S. W. (2d) 375; Hale v. Board of Education of Calloway County, 254 Ky. 96, 70 S. W. (2d) 975; Hall v. Boyd County Board of Education, 265 Ky. 500, 97 S. W. (2d) 38.

At the regular meeting of the Board of Education held May 2, 1938, the superintendent, Walter Chesnut, purposing then to name the teachers for the ensuing year, was engaged in reading an opinion of the Attorney General that such was his duty and prerogative, when he was interrupted by a motion of one of the members that the Board should not consider "hiring teachers today." The record shows that this motion was carried by the votes of three to two of the members. Nevertheless, the superintendent thereafter submitted his recommendations and list of the teachers and schools in writing as required by the statute. A motion to accept the recommendation and employ those teachers was lost. S. O. Clark and Wilson Stewart voted for the motion and J. B. McCowean, J. M. Harrison and J. S. Johnson voted against it.

At the regular meeting of the board held June 6th the minutes of the May meeting were approved by unanimous vote. But a motion was later made to strike from the record that part of the minutes "hiring the teachers and attendance officer." There were three votes in favor of it and two against. Then Mr. Stewart moved that the teachers recommended by the superintendent on May 2nd, and as recorded on certain pages of the board's record, and certain others to fill vacancies recommended by superintendent Chesnut, as named in this minute, be employed. Two members voted for and three against the motion. So there was no approval or election. It will be noted that no effort was made to postpone the consideration of this matter at this meeting and that the record is clear of any involvement. The action of the board, by a majority, consti-

tuted a straight-out rejection of the nominations made by the county superintendent.

It appears that Chesnut went out of office on July 1st and J. B. Reams became the county superintendent. A special meeting of the board was held on July 1st. As we read the minutes of that meeting, another motion to accept the nominations of the county superintendent, Chesnut, was defeated three to two.

On July 8th, the appellants and other teachers, nominated by Chesnut at the May and June meetings, instituted separate suits invoking the power of the court to compel the members of the county board of education to recognize their right to teach in the schools. Pending action on the motion for a temporary injunction, the board, on July 15, by a vote of three to two, adopted an elaborate resolution undertaking to correct the minutes of the meeting held June 6th respecting the recommendations of the county school superintendent. It is recited that, though the minutes showed a rejection of the recommendation, in truth and in fact the only proposal considered was merely to defer the employment of all teachers until after July 1st, and that it was on this proposal to defer that the board acted, three of its members voting in favor of doing so and two against it. The minutes of the June 6th meeting showing otherwise had been approved at the July 1st session. The falsity of the subject matter of this resolution and the correctness of the minute of June 6th are established by the testimony of the members of the board.

The circuit judge refused to issue a temporary injunction sought by the plaintiffs. A similar motion was made before Judge Thomas, a member of this court. Judge Thomas stated in his memorandum opinion that he entertained a considerable doubt as to the correctness of the trial court's refusal to grant the injunctions. He pointed out that since it would be less than a month until this court would convene the case could be tried upon its merits and disposed of finally in a brief period. He added that if it should then be found that the plaintiffs were right in their contentions they would "not necessarily be deprived of their salaries during that month since at least the substitute teachers, who are defendants in each separate case, could be compelled to refund the salaries to plaintiffs so illegally paid." The

plaintiffs quickly took their proof and actively pursued a purpose to obtain an early decision. The defendants apparently pursued a purpose to prevent an early decision. The judgment was not finally entered until November 21, 1938. It adjudged the plaintiffs not to be entitled to any relief. Because it was required that the many records be copied in full, the appeals were not filed until December 19th. Appellees did not file brief until January 23rd.

The law concerning the right and authority of the county superintendent and the duties and limitations of authority of the county board of education was at all times clear and well settled. The members of the board were so advised. The record discloses a purpose to ignore the law in order to obtain some personal and political advantage, apparently through the incoming county superintendent, J. B. Reams. Nepotism appeared in the selection of the attendance officer and some of the teachers after July 1st. Since the school year began July 1st the law required that teachers should be chosen before that date.

The only real defense submitted in support of the judgment is the resolution of July 15, undertaking to correct the minutes of the May and June meetings of the Board of Education to have the record show that there was never any vote had upon the nomination of the teachers but only a postponement. As indicated, the proof does not justify that conclusion. The status of the persons nominated had become fixed before this abortive action was taken. Logan County Board of Education v. Funk, 245 Ky. 701, 54 S. W. (2d) 38.

Suggestion by way of argument is made that where there were two or more teachers in a certain school to which one of the plaintiffs had been named by superintendent Chesnut, she did not declare which one of those places she was entitled to hold and did not make all of the teachers of that school parties defendant. This situation was further complicated by a resolution of the board, passed July 12th—after the suits were filed—authorizing the superintendent to shift teachers over the county from one school to another. We find no merit in this argument. The plaintiffs seem to have, respectively, selected as defendant the teacher who, through customary mode or order of appointment, was put in her place. Whether so or not, the relief sought

was primarily against the board of education and the teacher occupying the claimed place was made a party to the suit in order that she might have opportunity to protect her claims. In the absence of a showing of cause to the contrary, each plaintiff had a vested right to have her nomination recognized by the Board of Education before the school year began July 1st, and the order of July 12th could not affect that right.

Other arguments submitted are: (1) That the interference with the discretion of the Board and present Superintendent "substitutes the discretion of the court and disrupts the educational program in public schools;" and (2) now that the school term has all but expired, to reverse the judgment would upset "the orderly administration of the school affairs of Laurel County and destroy the vested rights of appellee teachers who have acted in pursuance thereto." The obvious response is that the legislature gave discretion to superintendent Chesnut and he exercised it. The only interference or substitution of discretion which would disrupt the educational program of the schools of Laurel County was the arbitrary refusal of the majority of the members of the Board of Education to recognize the superintendent's prerogative. The failure to obtain an earlier decision of the case is chargeable to the appellees, and it is only an argumentative assumption that the appellee teachers had vested rights by reason of the unauthorized action of the Board of Education. Cf. Taylor v. Bell County Board of Education, 260 Ky. 253, 84 S. W. (2d) 9.

It would seem that the maladministration developed in this record makes three members of the County Board of Education amenable to the provisions of Sections 4377-13 and 4384-13 of the Statutes, and perhaps to liability for whatever financial loss may be sustained by the parties or the school fund.

The defense was made in two of these cases; namely, those of Grace Durham and Ruby Broughton, that they had not received certificates showing their right to teach school at the time they were recommended by the county superintendent. Each of them held evidence of educational attainments, and at least one of them had a certificate issued by the State Department of Education to that effect. Section 4502-11 of the Statutes has been several times construed to mean that

the qualification to teach is to be determined as of the day and time when the applicant begins to fill his contract and not as of the date of his application. Rice v. Gilliam, 226 Ky. 613, 11 S. W. (2d) 431; Board of Education v. Akers, 243 Ky. 177, 47 S. W. (2d) 1046; Reynolds, County Superintendent, v. Spurlock, 257 Ky. 582, 78 S. W. (2d) 787; Bullock v. Brown, 258 Ky. 522, 80 S. W. (2d) 593. This defense, therefore, was not a meritorious one.

The judgment in each case is reversed with directions to enter judgment decreeing that the appellants were entitled to teach in the schools to which they were severally nominated by the County School Superintendent.