## Cottongim et al. v. Stewart et al.

June 21, 1940.

F. P. Stivers, Judge.

Hiram H. Owens for appellants.

A. T. W. Manning for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

The above-styled case is one of a series of twenty appeals, in each of which the complaining teacher was plaintiff below, and appellant here. The appellees, defendants below, were the persons constituting the Laurel County Board of Education, and in each case the teacher illegally employed by the board.

The controversy was before us on appeal at a time when there were twenty-three appellants. Cottingim v. Stewart et al, 277 Ky. 706, 127 S. W. (2d) 149. The

opinion was rendered on February 7, 1939; rehearing was denied May 2nd of the same year. Referring the reader thereto for all facts and conclusions, we shall nevertheless give brief resume.

At a meeting of the board on May 2, 1938, the then superintendent, Chestnut, had made, as is directed by law, recommendations for teachers in the county schools, and was insisting on appointment. Pertinent to the discussion of the case it is shown that the superintendent was reading to the board an opinion of the Attorney General, directing their attention to the peremptory duty of the board to follow his recommendations. Some member of the board interrupted, saying the board would not "consider hiring teachers today," and a motion to that effect carried. Another motion to approve the list was lost by a three to two vote, members McCowan, Harrison and Johnson being the negative majority.

At the next regular meeting of the board, June 6, the minutes of the preceding meeting were approved, but later a motion was made and carried to strike from the minutes the language "hiring the teachers and attendance officer," and one member moved that the teachers recommended by Chestnut be employed. This motion was lost by the same vote. We observed in the former opinion that "no effort was made to postpone the consideration of this matter at this meeting and that the record is clear of any involvement." [277 Ky. 706, 127 S. W. (2d) 150.]

Chestnut went out of office July 1, 1938, and was succeeded by J. B. Means, and at a special meeting of the board on July 1, another motion to ratify Chestnut's recommendation was lost three to two. On July 8, all the rejected teachers filed separate suits, asking that the board be directed to recognize their rights to teach in the named county schools. Pending action on a motion for temporary mandatory injunction, the board on July 15, three to two, adopted a resolution undertaking to correct the minutes of the June 6 meeting, so as to show that the proposal considered was to defer the employment of all teachers until after July 1.

We said that the minutes of the June 6 meeting showed otherwise, and had been approved on July 1, and

that "the falsity of the subject matter of this resolution, and the correctness of the June 6 minutes, are established by testimony of the members of the board."

The lower court refused a temporary order, and a similar motion was made before a member of this court, and in memorandum, the judge hearing the motion, stated that he had considerable doubt as to the correctness of the court's ruling. He pointed out that since it would be less than a month before the convening of the trial court, when a trial upon merits could be had, that if it should then be found that the plaintiffs were right in their contentions, they "would not necessarily be deprived of their salaries during that month, since at least the substitute teachers, who are defendants in each separate case, could be compelled to refund the salaries to plaintiffs so illegally paid."

It then appears that plaintiffs took proof and actively endeavored to obtain an early decision, which was to some extent thwarted, and there was no decision until November, 1938, appeals filed in December with appellees' briefs coming in as late as January 23.

We found the law concerning the authority of the superintendent to be clear and well settled, of which fact the board was advised. We said the record disclosed an intent to ignore the law for the purpose of gaining political or personal preference through the incoming superintendent, hinting at nepotism.

There was argument presented, generally as to the danger of substituting the court's discretion for the board's, which might thereby disrupt the school program, and that since the school term had all but expired, to reverse the judgment would upset the orderly administration of school affairs, and "destroy the vested rights of appellee's teachers who have acted in pursuance thereto." On the whole case we found the defenses without merit and reversed judgment in each with directions to the lower court to decree that the "appellants were entitled to teach in the schools to which they were severally nominated by the superintendent."

Mandate was filed, and on May 10, 1939, an amended petition was filed making the new board mem-

bers parties defendant. The amended pleading alleged that under the rules for payment of Laurel County teachers, the basic salary was $65.50, with credits for educational fitness and experience of $14.20 for a certain number of college hours (71), and $2.50 for two years' experience, which qualifications the plaintiff possessed. His pay thus would have been $82.20 per month during the seven months' school period, in all $575.40, which he had demanded, less his interim earnings, and recited that "prior hereto injunction was sought and plaintiff is now entitled to judgment preventing defendants from paying said money to any other person, and to a mandatory injunction directing the members of the board to disburse to the plaintiff the money now so owing. He prayed for judgment for the sum named and for an order compelling the board to pay. The same character of plea was made in each of the other nineteen cases.

Notice was given and plaintiff filed his motion for injunction, the motion asking that the board be compelled to set apart and pay plaintiff the money "to which under the decision of the Court of Appeals in this case, plaintiff is entitled to receive."

In the first case, as is shown, teachers had been employed by the board, and they were then teaching, and it was sought to have the substitute teachers refund to those who were contesting their rights. In all the twenty cases these teachers answered. Brock did in the instant case. His pleading was an answer and counterclaim against appellant, and a cross-petition against the board. He first denied the allegations of the amended pleading, and alleged that he was the duly employed teacher in one of the Laurel County sub-districts, and so employed on the recommendation of the superintendent.

He further says that he taught during the entire seven months of school, as provided in his contract, hence entitled to have and receive the salary for his services, which were rendered in good faith. He says plaintiff rendered no services, and is not entitled to be paid anything, or to receive any of "his remuneration for teaching said school." He merely asked that the amended petition be dismissed, and he be allowed to re-

tain what was paid him for service. This is the only intimation that substituted teachers had been paid.

The Board of Education filed its answer, denying the allegations of appellant's amended petition, particularly in his conclusion as to the effect of the decision of this court on the first appeal. In a second paragraph they affirmatively allege that plaintiff was never employed by the board to teach in any school in Laurel County, and hence rendered no service; but that he engaged in other gainful occupation during the school period, and that the service for which he is claiming was rendered by other persons, duly and regularly employed by the board, and who are now claiming the remuneration for their services.

The plaintiff demurred to the second paragraph of the answer, and upon consideration the court sustained same. Plaintiff then replied (notwithstanding demurrer was sustained) admitting that he had engaged in other occupation during the school term, but denying that the service for which he was seeking pay was performed by others regularly and duly employed, or that such other persons were claiming remuneration for such services. He supplements his plea by alleging that "he was not employed in any public school or other gainful occupation of like nature or at all, by which he earned more than the amount here in controversy, or any sum net above expenses." Like pleadings were filed in each case, save as to amounts. The court set aside the first judgment, and a judgment in conformity to our opinion was entered retaining the case on the docket "to try out any issues raised, or to be raised on the petition as amended, and all other matters that may arise in this case hereafter."

Appellant testified by way of deposition, in which he stated that had he been permitted to teach the school in question, his pay would have been $82.50 per month. That he tried to obtain school employment in two or more other counties, but without success. On cross-examination he said he worked at a filling station for some time at $1 per day. That was his only source of income. This amounted to $196 for seven months.

With the cases in the condition as to pleadings and proof, they were submitted in chief on February 10,

1939, and the court held that the pleadings and proof did not show that appellants had written contracts for employment as teachers in the public schools for the year ending June 30, 1939, and dismissed the petition as amended, with costs from the time of the filing of our mandate, against plaintiffff, to which plaintiff objected and excepted and was granted appeal. Appellant superseded the judgment. The same proceedings were had in each case.

Appellee in brief contends that the cases cited by the court below, upholding his decision, and which are not at all unfamiliar to us, are absolutely conclusive of the question presented here. Leslie Co. Board of Education v. Melton, 277 Ky. 772, 773, 127 S. W. (2d) 846, is exemplary, and like others cited clearly shows negligence on the part of the teacher; not so here. Reading them, as we have, we find that none of them manifest the same facts and circumstances as are presented in this case. In none of the cited cases did the occasion arise for us to say as was written in the first opinion:

> "It would seem that the mal-administration developed in this record makes three members of the County Board of Education amenable to Sections 4377-13 and 4384-13 of the Statutes, and perhaps to liability for whatever financial loss may be sustained by the parties or the school fund."

Upon consideration of the record before us, we have concluded to reaffirm the paragraph, amending the latter part by striking out the word "perhaps." In so far as the three board members, who by their majority negative action brought about the existing situation are concerned, and the teachers who profited by the illegal appointments accepted by them, there was no lack of warning as to what might be in store for them if appellants were successful. Appellants acted swiftly and promptly, and notwithstanding the red flag of the Attorney General, and the "stop, look and listen," sign held up by Justice Thomas, shortly after the suit was begun in the lower court, the erring parties heedlessly moved along into the danger zone.

In addition to what ought to have been more than the hints referred to, the record in the first case shows

that the appellees were served with notice that their acts and activities were being vigorously challenged, and that they might reasonably expect to be required to conform to the ruling of the Attorney General, which undoubtedly correctly construed the applicable law.

After consideration of the matters presented on the appeals, we have reached the following conclusions: First; we are unable to determine fully from the pleadings whether or not the board has heretofore paid the substitute teachers. It may be inferred only, from the amended petition of appellant, the answer of the board members, and the pleading of Brock, that there had been payment; if not the solution of the case becomes simplified, since we have concluded that appellant and his fellow-teachers are entitled to substantial relief. What we mean to say is, that if the money which was rightfully due to the various rejected teachers is earmarked, then there should be a judgment in each case directing payment for the amount each would have received had he or she in fact taught during the school term, less any sum as is or may be shown did, or might have, minimized the sum in damages sought. If the money has not been set aside, no judgment should go against the school funds.

It is a well-established principle of law, in this and other jurisdictions, that neither the state, nor any of its governmental agencies, should be permitted to suffer loss that must be borne by the public on account of the failure of an officer to perform an imposed duty. "It has been written in many cases that the state should not be allowed to suffer loss on account of the negligence of its officers." Clay County Board of Education v. Lewis, 187 Ky. 231, 218 S. W. 716, 717, citing Com. v. Tate, 89 Ky. 587, 13 S. W. 113, 12 Ky. Law Rep. 1; Fidelity & Deposit Co. v. Com., 104 Ky. 579, 47 S. W. 579, 49 S. W. 467, 20 Ky. Law Rep. 1402.

It will be observed thus far, and as we proceed, that the actions here, particularly after the filing of the amended pleadings in each case, are to be treated as, and in fact and law are, actions for damages. As against the members of the board, for their failure to perform mandatory legal duties so as to permit or cause a contract made with appellants. As against the substitute teachers, for money had and received by them

illegally, on contracts which were illegal, with knowledge of the illegal acts of the board members.

We have held that an applicant for position of teacher, after nomination in the manner required by law, had a vested right to have such nomination recognized and sustained by the board, and further that a succeeding superintendent had no legal authority to nominate later other teachers for contract, except for good cause shown. Stith v. Powell, 251 Ky. 155, 64 S. W. (2d) 491; Hudson v. Ohio Board of Education, 253 Ky. 709, 70 S. W. (2d) 375; Beckham et al. v. Kimbell et al., 282 Ky. 648, 139 S. W. (2d) 747, decided April 25, 1940.

In the case of Board of Education, Calloway County v. Talbott, 261 Ky. 66, 86 S. W. (2d) 1059, 1063, in discussing a school matter in part common to the one here, we said:

"All teachers of the common schools * * * are state employees, and in discharging their duties, they render services for the state, for a public purpose. B. of T. Fairview G. C. S. Dist. v. Renfroe, 259 Ky. 644, 83 S. W. (2d) 27, decided May 28, 1925. As state employees, they are entitled to the wages or salaries which are provided for by enactments which the Legislature may, in accordance with the provisions of the Constitution, appropriate and distribute on a per capita basis to all teachers of the common schools of the commonwealth."

It would seem to follow that the laws, as laid down in respect of teachers' rights, duties, powers and emoluments should not differ from such laws as relate to officers, under the same or similar circumstances. "A school teacher is not properly speaking a public officer, yet his employment is in a public capacity, and he is treated in some cases as a public official, and in others he is not." 22 R. C. L. p. 397, Sec. 34.

We shall approach the subject of the rights of appellant by undertaking to ascertain what would be the legal status of Brock, substitute teacher, in the Cottongim case, if he were undertaking to collect from the school fund for teaching, under what we have already

determined his illegal contract, liberally treating him as a de facto employee, and for sake of analogy only placing him in the category of de facto officer. In Mechem on Public Officers, p. 221, it is stated:

"But while the acts of the de facto officer are thus valid as to third persons, he cannot himself acquire rights based upon his defective title.

"It is well settled, therefore, that he cannot maintain an action to recover the salary, fees or other compensation attached to the office.

" 'It is the settled doctrine in this State,' says the court in New York, that the right to the salary and emoluments of a public office attach to the true and not to the mere colorable title, and in an action brought by a person claiming to be a public officer, for the fees or compensation given by law, his title to the office is in issue, and if that is defective and another has the real right, although not in possession, the plaintiff cannot recover. Actual incumbency merely gives no right to the salary or compensation."

The Board of Education of Laurel County had due notice that Cottingim was contending that he had the legal right, a vested right to teach the 5th and 6th grades in the school to which he was to be and should have been assigned, and later was vehemently contending that Brock could not have acquired such right, and his contention that any act on the part of the board which deprived him of his right was void, is correct. The same applies to Brock, and particularly so after ample notice.

However, we need not lengthen this opinion with lengthy quotations from cases or texts as to the rights to emoluments as between de jure and de facto claimants. Reference may be made as bearing out the text from Mechem, supra, to 22 R. C. L. pp. 545 and 546, and Eubank v. Montgomery County, 127 Ky. 261, 105 S. W. 418, 32 Ky. Law Rep. 91, 128 Am. St. Rep. 340, 16 Ann. Cas. 483; Wagner v. Louisville, Ky., 117 S. W. 283, and the recent case of Hubbard v. Ledford, 258 Ky. 704, 81 S. W. (2d) 569; Shepherd v. Gambill, 75 S. W. 223, 25 Ky. Law Rep. 333; Brown v. Shannon, 280 Ky. 88, 132

S. W. (2d) 525; Flanary v. Barrett, 146 Ky. 712, 143 S. W. 38, Ann. Cas. 1913C, 370; Walters v. City of Paducah, 123 S. W. 287.

In this case the Board of Education, charged with the knowledge of the law in respect of their duties in the premises, which was at the time of their illegal acts accentuated by an opinion of the Attorney General on the subject, nevertheless, no doubt with sinister motives in the offing, blindly ignored the law and legal advice, violated the law and their oaths of office. It was the dilatory conduct of the board and appellee Brock which delayed appellant in establishing, through the process of the law, appellant's rights, which but for the delay should and no doubt would have been speedily determined. To say that the recalcitrant members of the board are not responsible by way of damages would be a travesty on justice.

While Cottingim had no contract it has been demonstrated that he was, in every view of the law, entitled to have one from the board prior to July 1, 1938. It would not go far afield to apply the equitable doctrine to the effect that equity treats that which should have been done, as having been done, although the present cause of action is in law, for damages for negligent failure to perform on the part of the three members of the board, a legal duty. In the case of Vaughan v. Hindman, Supt. &c., 145 Ky. 507, 140 S. W. 641, we intimated that the failure of the board to furnish to the teacher a suitable place in which to teach, constituted a cause of action against the board for a breach of contract.

In Commonwealth, &c v. Sizemore, 269 Ky. 722, 723, 108 S. W. (2d) 733, 735, we said:

"It is to the interest of the public welfare that public officials should be held strictly to account, and the courts look with favor upon all good-faith efforts seeking that end."

It may be stated as applicable to the case in hand that the courts frown upon an effort on the part of public officials to use their endeavors to thwart such an end, as is evidenced by our opinions.

The law, as is applicable to the three board members who by their failure to act in conformity with the

plain provisions of the law, is well stated in Mechen on Public Officers, pp. 445, 633, et seq.:

> "It is self-evident, also, since the officer must justify his action, if at all, by showing that he was authorized by law so to act, that if he commits an act which his authority will not justify, or if he exceeds, ignores or disregards the limits set to his authority, he cannot then justify at all, but must respond to the party injured like any other wrongdoer.

> "But, on the other hand, it is equally well settled that where the law imposes upon a public officer the performance of ministerial duties in which a private individual has a special and direct interest, the officer will be liable to such individual for any injury which he may proximately sustain in consequence of the failure or neglect of the officer either to perform the duty at all, or to perform it properly.

> "In such a case the officer is liable as well for nonfeasance as for misfeasance or malfeasance."

When we apply the accepted definitions of the terms above used, it would appear that in failing to contract with appellant, and further in violation of law, contracting with Brock, the three members were guilty of at least two of the infractions named, since the same author continues:

> "Nonfeasance is the omission of an act which a person ought to do; malfeasance is the doing, either through ignorance, inattention or malice, of that which the officer had no right to do."

The same author further says:

> "That the failure of performance is by law made a penal offense, is no bar to the maintenance of an action by the individual injured."

We have applied the general principles in Ely v. Thompson, 3 A. K. Marsh, Ky., 70; Husbands v. Smith's Adm'r, 14 B. Mon. 208, 53 Ky. 208; Commonwealth v. Polk, 256 Ky. 100, 75 S. W. (2d) 761; Commonwealth v. Dishman, 232 Ky. 686, 24 S. W. (2d) 568; Dishman v. Coleman, 244 Ky. 239, 50 S. W. (2d) 504.

From the citations above, three conclusions seem to be inescapable: (1) The appellant and the other 19 appellants may not be paid from the school fund the amounts sought to be recovered by each, except to the extent of any funds that may have been retained by the school board, and not paid to substituted teachers. (2) That all appellants are entitled under the law to recover from the three individual board members whose acts were clearly illegal, and (3) to recover individually against the respective teachers, and jointly against the three board members, and the substitute teachers, and unless there be further pleading on the part of the substitute teachers, we see no reason why judgment should not now be entered.

In the Cottingim case appellant seeks to recover the sum he was entitled to receive under the law, based on the legal schedule, less such sums as he was enabled to earn in minimization of damages, and which is shown by proof in his case, and as we are informed, in each of the 19 cases. If we are wrong in our surmise, then the board members and substitute teachers would be entitled to the benefit of the law with respect to minimizing damages.

As the suit was originally brought, apparently against the board in its official capacity, no judgment should go against the board, touching any public school funds, unless the situation above stated exists. It does not appear clearly whether this is or is not true, and the pleadings may be reformed so as to make this point definite, as to all or any part of the compensation.

Our conclusion is that the judgment of the lower court should be reversed, with the right to each of the twenty appellants to so amend his or her pleadings as to bring J. B. McCowan, J. M. Harrison and J. S. Johnson personally before the court, with amendments in conformity with suggestions above, as to their liabilities.

The suits below were begun and prosecuted as against the board, and each substitute teacher, and there were separate judgments and appeals in each case. The clerk of this court will enter the order of reversal in each of the twenty cases, with directions to the lower

court to set aside the judgment in each and for proceedings consistent with this opinion.

The appellants in the respective cases are, Cottingim, Nola Ball, Ruby Reams, Daisy Chestnut, Verna McKnight, Rosa Brown, Grace Durham, Ollie Gregory, Thelma House, Mildred McDaniel, F. H. Craft, Eula Doughty, Ruby Broughton, Clyde Cornelius, Guy Parsley, Bessie Gregory, Laura Gilliam, Walter McDaniel, J. D. Parsley, Willie Cornett.

Judgment reversed.

Whole court sitting, except Judge Rees, who was absent.