## O'Daniel v. McDaniel, County Superintendent of Schools, et al.

March 20, 1942.

J. D. Via for appellant.

M. C. Anderson and N. D. Montgomery for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellant, plaintiff below, in August, 1940, instituted suit against the County School Superintendent of Hickman County, and the Board of Education, seeking mandamus to require the board to contract with him as principal of the school at Columbus. His complaint was that Miss Beckham, who was superintendent up to July 1, 1940, had in due time recommended him for the appointment, but that appellee, who became superintendent on July 1, and the board, had arbitrarily ignored the request and appointed another. The petition plead activities of the former superintendent, and the actions and non-actions of the board, as shown by its records which, though not complete in some respects, are before us.

It was alleged that on April 6, at a regular meeting, when three of the five members were present, after attending to other matters, the superintendent "told the board that she was ready to make recommendations of teachers for the schools for the school year 1940-41. The chairman said the board was not ready to take action on this matter since two members of the board were absent, one member left the meeting, and the meeting adjourned."

At the next meeting, April 10, all members were present; after routine matters were disposed of, the superintendent "told the board she was ready to make recommendations of teachers" for the coming school year. The chairman said "that since this was a special session, the election of teachers could not take place, whereupon

the superintendent said that this was a continued session and that any matter pertaining to schools could be discussed and voted upon. No action was taken in the matter."

On May 4, at a regular meeting, after other matters had been attended to, the minutes showed: ("The following list of teachers for the school term 1940-41, was presented to the board by Supt. Beckham"), then follows a recorded list of teachers for various schools, among which appears the name of appellant, under the word "Columbus" and following his name the word "principal." The record shows, after notes of other business transacted:

("Whereupon Luther Morrison made a motion that the board adjourn; Supt. Beckham asked to be allowed to read the list of teachers recommended; when not allowed to read the list the member then said that if she wrote the list of teachers as she proposed * * * that the minutes would not be approved, and the superintendent placed the list on the table for the board.") We have used parentheses for the purpose of later reference to these excerpts.

On June 1, noted in the records as a regular meeting day, two members came to the superintendent's office and remained for thirty or more minutes and left. Three came in the afternoon, but at different times, so at no time on that day was there a quorum. On July 6, after Miss Beckham had been succeeded by Mr. McDaniel, a regular meeting was held, all members being present, during which it was ordered that certain portions of the minutes of the May 4th meeting be "expunged and marked off the record, because said parts were not in accordance with the actions of the board at that meeting." The parts so expunged, which were set out in the motion, are the portions embraced in parentheses, supra, including the list of teachers attached to the recorded minutes of that meeting. Opposite the "marking out" of the expunged portion, in each instance, appear the notations:

"Expunged from the record at Regular July 6th meeting because conversations and recommendations did not happen as stated."

The defendants jointly answering, first by way of

denial, said that the superintendent had never made recommendations, but if so, that at the time she had no power to make such recommendations; that the school at Columbus was not of that class which required a principal, but became so only about July 1, 1940, and it may be said here that regardless of this plea, the board appointed those who had been listed by the former superintendent, except five or six, and named another as principal at Columbus. After issues were completed, and without passing on various dilatory motions and pleas, the cause was submitted on pleadings and proof; the court denying appellant the sought relief, dismissed the petition, overruled motion for a new trial, and this appeal follows.

It is insisted by appellant that since the records and proof manifest a decided effort on the part of the members to defeat the selection of appellant, who was legally recommended, this court should hold the election of the substituted principal at Columbus school void, and direct the appointment of appellant. On the other hand, it is insisted that the outgoing superintendent at no time made recommendations, basing this argument on the records exhibited, including the one of July 6, and proof.

Appellant testified, and undertook first to show his qualifications, legally, educationally and morally, which matter, at the suggestion of the court, was not pursued because there was no issue on this point. The former superintendent read into the record the minutes of April 6, and the records of the meeting of April 10. When she started to read the minutes of the meeting of May 4, the court suggested that the reading might be dispensed with, since there were certified copies exhibited. She was then asked to read that part of the minutes of May 4 relative to recommendation of teachers for 1940-41, and the court ruled that she should not do so, since they were in custody of the new superintendent. She did testify that appellant had been principal at Columbus school theretofore. She was shown the typewritten copy of the recommendations, which she identified as a true copy, and after a colloquy the court permitted witness to say that the typewritten copy exhibited was a true copy filed by her in the minute book.

The present superintendent testified that he "suspected" that he saw the typewritten list when he went into office July 1, 1940; it was attached to a page of the

record book. The chairman of the board said that he was at the May 4th meeting, and that he had never seen or heard of the list of teachers as proposed by the former superintendent, until the first meeting in July. Another member of the board said that no list was presented or tried to be read at the May 4th meeting, though he says after motion to adjourn was made and "passed on" the superintendent said she wanted to recommend teachers, and "I told her we wouldn't approve the minutes." The chairman also said, "I told her we could not elect teachers then, the meeting was adjourned." A third member testified that he was at the meeting of May 4, and that after adjournment the superintendent wanted to make recommendations, but the chairman said, "We have already adjourned." "She said she was going to file her recommendations as of that date, and I told her if she did we wouldn't approve the minutes."

We are convinced, after a review of the record, that the court below did not correctly apply the law to the facts. Were we not, under our rules we would hesitate to interfere with his judgment. While there is nothing to indicate just how the court reached his conclusion, it was apparently upon the insistence of the board members who testified that the superintendent did not properly present the name of appellant for selection.

The statute, Section 4399-34, under which the superintendent is authorized to make appointments, does not lay down any particular method, and differs in some respects from the requirements under which district trustees make nominations, Section 4399-9. The recommendation by the superintendent may be in writing or oral. Floyd County Board of Education v. Hall, 242 Ky. 680, 47 S. W. (2d) 514. That the Board of Education may not reject recommendations made by the superintendent, unless for cause shown, is too well settled for discussion. Bernard v. Sims, 279 Ky. 565, 131 S. W. (2d) 505; Cottongim v. Stewart, 277 Ky. 706, 127 S. W. (2d) 149; Id., 283 Ky. 615, 142 S. W. (2d) 171; Wisdom's Adm'r v. Sims, 284 Ky. 258, 144 S. W. (2d) 232.

Undoubtedly this same board had a broad hint as to the meaning and intent of the law in respect of the prerogative of the superintendent and the duties of the board in the selection of employees, in the case of Beckham v. Kimball, 282 Ky. 648, 139 S. W. (2d) 747, in which we suggested that the board may not defeat proc-

esses by which employees of the board are required to be chosen, nor divest them of right by postponing approval where the superintendent has seasonably acted, without showing cause.

As we read this record it is evident that the superintendent used her efforts in undertaking to "seasonably" make appointments, and in which effort we think she was successful to such an extent as to require the board to at least consider them, and further to comply unless for valid reasons, and such were not offered. On the other hand, it is difficult to escape the conclusion that the members, or some members, adopted inexcusable tactics to, circumvent the selection of employees until after the retirement of the then incumbent officer.

At the April 6th meeting, when it was announced that she was ready with recommendations, the excuse was the absence of two members. A quorum was present, and it is not suggested why a quorum should not have received and considered nominations. Under Section 4399-20 Kentucky Statutes, a majority may act. On April 10, when again ready to nominate, it could not be done because the chairman, or some member, was of the opinion that the session was a "special" one, perhaps meaning a "called" meeting, Kentucky Statutes, Section 4399-20. The record shows, as was contended by the superintendent, that the meeting was a continuation of the April 6th meeting, and though perhaps continued for a certain purpose, this fact should not have prevented the filing or reading of a list of nominated employees, had the board been of receptive mind.

We need not go into any lengthy discussion of the verity of the minutes of May 4. Here again the superintendent was ready to make her nominations, when the board adjourned without permitting her to do so. The matter was of sufficient importance, as far as the law is concerned, to have authorized a reassembling. Be that as it may, or whether or not the list was duly filed at that time, or whether certain proceedings and the later recorded list were or were not properly expunged at the meeting of July 6, the fact remains that the list was found by the successor superintendent, attached to the minute book, on July 1st when he assumed office, and as far as the record shows to the contrary, this list was before, considered, and except in certain instances followed by the board. There is no evidence that any other

list was furnished by the successor superintendent. The list contained the name of appellant as principal and Powell as teacher. The positions were changed, the reason given being that the superintendent was of the opinion that the interests of the Columbus school would be better served by the change.

The argument that at one place, either in the recorded list or list attached to the book, the word "principal" did not occur following appellant's name, and the word "Columbus" was not identified by the word "school," authorized the board to reject appellant as principal at Columbus school, is trivial. The proof shows that without such designation the board understood the meaning of the list, and from at least one of the papers it was no doubt known to the board that it was intended that appellant was recommended as principal, and it is clear from the record, by proof and documentary evidence, that appellant was qualified to hold the position.

We look upon the efforts of the former superintendent as having been exercised in a good faith, to comply with the provisions of the statute. On the other hand, we view the actions and non-actions of the board, or some of them, as evidencing a fixed determination to thwart the purpose of the superintendent. A reading of numerous opinions from this court will demonstrate that we have endeavored in every instance, where the occasions arose, to hold educational boards to a substantial compliance with the laws, thus to accomplish if possible the salutary purposes evinced by the legislature in endeavoring to improve our system of education. Having such views, we are forced to the conclusion that in this instance there was a sufficient recommendation; such a substantial compliance with the law on the part of the superintendent as to require the board to carry into effect the recommendation of appellant as principal at Columbus school for the 1940-41 school term, and that the board failed in the performance of its legal duty.

It is argued by appellees that the question before us is now moot; this because the school term has expired, and because appellant is shown to have taught in the school for the term, and since he has not alleged or shown that he suffered monetary loss, he has not suffered damage. It is true that he pleads no monetary damage. His claim was that he was entitled to a contract as principal.

At the time of rendition of judgment in the lower court his case was an open one. Had the court below correctly determined the issue, thus fixing appellant's rights, his procedure then would have been by recourse against the board, or the person who was given the position to which he was entitled, or both. Second Cottongim case, supra.

The court below could not at this time grant him the relief sought, but it can, as we have done, determine that it was the board's duty to have contracted with him at the proper time. In the Wisdom case, supra [284 Ky. 258, 144 S. W. (2d) 236], referring to the Cottongim case, we wrote:

> "* * * one who has been legally nominated by the proper officer, and whose name has not been legally withdrawn for legal reasons, acquires a vested right to teach, as much so as if the contract had been actually signed."

To the same effect is the second Cottongim case, supra.

While the court below cannot now by mandamus compel the board to attempt an impossible act, it can and should set aside the judgment and enter one holding that the board acted beyond its legal duty in rejecting the recommendation of plaintiff; nor can we, in the state of the pleadings, direct other proceedings.

Judgment reversed for proceedings not inconsistent with this opinion.