Arthur T. Iler, Central City, and Meredith, Iler & Logan, Greenville, for appellant.

Russell O'Neill, Greenville, for appellee.

VAN SANT, Commissioner.

The suit is based on a breach of warranty in respect to the age, breeding, rated speed, and soundness of a pacing race horse purchased by appellant, plaintiff below, from appellee, defendant below.

Appellant's brief, standing alone, shows the evidence supports his contentions, viz., the horse was represented to be 7 years of age, a grandson of Dan Patch, had a speed rating of 1 mile in 2:15, and was sound for racing; whereas, he was 10 years of age, not related to Dan Patch, had a rating of 1 mile in 2:30 which rendered him ineligible for racing, and had the appearance, according to experts, of being unsound.

Appellee has not filed a brief in this Court, although appellant's brief was filed December 22, 1949, the appeal was submitted January 2, 1950, and appellee was notified of his delinquency by the Clerk of this Court on February 23, 1950.

Where the questions were of importance to the bar or the public in general or the brief for appellant was weak, we often have studied the record and assumed the responsibility of meeting the contentions of the appellant. We never have assumed this extraordinary burden merely to protect one who has manifested his own indifference to the outcome of the litigation.

The questions involved on this appeal are of no importance to anyone except the parties litigant, the brief for appellant has been prepared with diligence and skill, and we have neither the time nor inclination to dispute the apparent soundness of the argument presented by appellant's attorneys. Wherefore, the judgment is reversed with directions that it be set aside and that another be entered granting the relief prayed in appellant's petition.

Skaggs v. Ohio Valley Rock Asphalt Co., 292 Ky. 758, 166 S.W.2d 1005, and cases therein cited.

Judgment reversed.

## SMITH v. BEVERLY et al.

Court of Appeals of Kentucky.

Feb. 16, 1951.

Kinsolving & Reasor, Shelbyville, for appellant.

John M. Berry, L. T. Peniston, John W. Coomes, New Castle, for appellees.

STEWART, Justice.

The issues to be decided by this Court are raised entirely by the pleadings of appellant, Bert Smith, in this appeal from a judgment adversed to him in a suit in equity in the Henry Circuit Court against Charles A. Beverly, W. E. Stone, H. T. Watkins and W. H. Cravens, members of the Henry county board of education, and Mrs. Lucille Shannon, Harold Dorsay and Roy Dorsay, substitute principals of the New Castle high school during the 1947–48 term.

Smith's petition alleges that on September 2, 1947, at a regular meeting of the Board, Mrs. J. T. Highfield, the legally appointed and acting Superintendent of the Board, recommended him as principal of the New Castle high school for the school term of 9 months, beginning September 9, 1947, and ending the latter part of May in 1948. Appellees, Beverly, Stone, Watkins and Cravens, who constituted a majority of the members of the Board, declined to act on the Superintendent's recommendation of Smith for the position by simply adjourning the meeting and they thereafter refused to appoint him as principal of the high school. Although Smith's name was never withdrawn by the Superintendent from consideration by the Board for the high school principalship, appellee Board Members, acting independently of the Superintendent, employed Mrs. Shannon, who taught from September, 1947, to January, 1948, and was paid $1162.20; Harold Dorsay, who taught during January, 1948, and was paid $290.55; and Roy Dorsay, who taught from February, 1948, to May, 1948, and was paid $1162.20. Each of these substitute principals, Smith avers, was unlawfully employed and paid by appellee Board Members, each knowing that Smith was entitled to the position held and the pay received by each of them.

Smith has a standard life certificate, authorizing him to teach in any high school in Kentucky. For the school terms 1942–43 and 1944–45, he was employed as a teacher in the high schools of Henry county. It is not in dispute that he is morally fit and educationally qualified for the position to which he was recommended. He says that he was unable to work and earn any sum in his profession during the school year 1947–48, although he made an effort to secure like employment. He was at all times ready, able and willing to perform the duties of principal of the New Castle high school for the 1947–48 school term. All public funds for the upkeep of the 1947–48 school year have been exhausted, he states, so that his remedy lies solely against appellee Board Members as individuals and against appellee substitute principals as illegal holders of his position.

In his petition he asks for the following relief, namely: That it be adjudged, because he was recommended by the Superintendent to the Board, it was the duty of the Board to approve him and to appoint him principal of the New Castle high school; that he acquired a vested right to have his nomination recognized and approved by the Board; that he have judgment against Mrs. Lucille Shannon for $1162.20, against Harold Dorsay for $290.55, and against Roy Dorsay for $1162.20; and that he have judgment against Beverly, Stone, Watkins and Cravens, jointly and severally, for $2614.95, with interest thereon from June 1, 1948, until paid, to be credited by whatever sum is recovered by him from Mrs. Shannon, Harold Dorsay and Roy Dorsay.

Appellees filed, first, a joint motion to dismiss the petition, and, next, a joint demurrer to the petition. Lastly, each appellee filed a separate demurrer to the petition. The motion and the several demurrers were sustained. Smith declined to plead further and his petition was dismissed.

Appellees, in their motion to dismiss, contend that Smith's petition is fatally defective because he did not allege therein his right and claim to the position of principal of the high school for the term 1947–48 had been previously determined by a court of competent jurisdiction in a direct proceeding thereto. Then, if appellees' motion to dismiss is overruled, they insist upon their demurrers because the nomination of Smith by the Superintendent to the office and for the term in question on Sep-

tember 2, 1947, was not timely made, so that the Board was relieved of its statutory duty to employ him as principal.

Our determination of the second issue raised by appellees will dispose of the first contention urged by them. Appellant's rights in this litigation are governed solely by the statutory law set forth in KRS Chapter 160. Particularly applicable to his case is KRS 160.380 and the construction we have given to this section in our numerous decisions.

We have held in our interpretation of the last mentioned section that it is the mandatory duty of a board of education to elect a recommendee of its superintendent, if such recommendee possesses the necessary moral and educational qualifications; and, in passing on any recommendations made by its superintendent, no board has the right to arbitrarily reject a recommendee, but it is limited in its right of rejection, in the exercise of sound discretion, to determine whether the recommendee is morally fit or educationally qualified for the position to which he is recommended. Stith v. Powell, 251 Ky. 155, 64 S.W.2d 491; Hudson v. Ohio County Board of Education, 253 Ky. 709, 70 S.W.2d 375; O'Daniel v. McDaniel, 290 Ky. 77, 160 S.W.2d 331.

In Amburgey v. Draughn, 288 Ky. 128, 155 S.W.2d 740, 742, at a meeting held on May 5, 1941, the county superintendent submitted to the board a list of proposed teachers and other school employees for the ensuing school year, all of whom were employed at a subsequent meeting, except two teachers and a bus driver. In a suit to have each rejected recommendee declared entitled to the employment and the emolument of the position to which each was recommended, this Court, in passing on the rights of each teacher nominated by this superintendent, said that "* * * one who is legally qualified for the position, and who has been duly nominated by the proper officer and whose name has never been withdrawn, acquires a vested right to teach, or perform the duties of his employment, and to receive the emoluments of the employment, as certainly as if a contract had been executed with the approval of the board.

* * * Thus it will seem the law implies a contract between the parties, specific performance of which will be enforced by the court, and for the breach of which damages may be allowed."

Damages are not allowable against a board of education in its official capacity because the money appropriated for the payment of the salaries of the position in dispute has been expended, and public funds may not twice be drawn upon for services once received. Damages will lie, however, against the members of a board of education for their failure to perform their mandatory legal duties, and against substitute teachers for money had and received by them on contracts which were illegal, if it be shown that they had knowledge of the illegal acts of the members of the board. In such a case, as in all other suits for damages arising out of the breach of a contract, it is the duty of the person seeking a recovery to minimize the damage. Cottongim v. Stewart, 283 Ky. 615, 142 S.W.2d 171. The burden of showing an effort to minimize damages is upon the person seeking a recovery, since it is a necessary element in proof of the amount of the damage he is entitled to receive. Amburgey v. Draughn, supra.

KRS 160.380 reads as follows: "Except as provided in KRS 160.130 and 160.430, all appointments, promotions and transfers of principals, supervisors, teachers and other public school employees shall be made only upon the recommendation of the superintendent of schools, subject to the approval of the board. If the board of education cannot agree with the superintendent as to any legally qualified person recommended by the superintendent, the board of education may appeal to the State Board of Education to review the case and the decision of the State Board of Education shall be final. All employees of the board shall have such qualifications as are prescribed by law and by the regulations of the State Board of Education and of the employing board. Supervisors, principals, teachers and other employes may be appointed by the board of education for any school year at any time after April 1,

next preceding the beginning of the school year."

KRS 158.050 provides as follows: "The school year shall begin on July 1 and end on June 30."

In our interpretation of the provision of law first above quoted, we are unable to read into it the construction that appellees place upon it, namely, that the Superintendent must make all recommendations of school employees before July 1st of each year, the beginning of the school year, or the Board may take over thereafter and make all appointments according to its choice. If there is a time limit to be observed, it specifically applies to the Board, for the last sentence says that appointments of school employees may be made "by the board of education" after April 1st and before July 1st, the beginning of the school year. Moreover, this section does not state or even imply that the Board may appoint any school employee at any time independently of the Superintendent, or ignore after a certain date any recommendee of the Superintendent. To hold otherwise would impair the legislative intent so clearly revealed in the language of this section.

In the recent case of Beverly v. Highfield, 307 Ky. 179, 209 S.W.2d 739, affecting the same Superintendent and Board involved in this litigation, the Board, acting without the Superintendent's recommendation and against her will, entered an order on its records on July 3, 1946, appointing John W. Long as principal of the New Castle high school for the year 1946-47. Although this appointment was made after July 1st, this Court held that the Board had no right or authority to make such an appointment, in the absence of the principal's nomination by the Superintendent, and that its contract with Long was void.

Appellees cite Duff v. Chaney, 291 Ky. 308, 164 S.W.2d 483, and Beckham v. Kimbell, 282 Ky. 648, 139 S.W.2d 747, as cases that uphold their contention that a superintendent must recommend before July 1st of each year or forfeit his right in this respect thereafter to the board members. We have examined each of these cases carefully and we are convinced that neither decision supports the view advanced by appellees. Nor do the facts in either opinion warrant any such conclusion of law. The cases of Evans v. Bourbon County Board of Education, 258 Ky. 258, 79 S.W.2d 975, and the Christian County Board of Education v. Gee, 217 Ky. 561, 290 S.W. 329, are also relied upon by appellees to bestow absolute power upon the Board to appoint the substitute principals after considerable time had elapsed from July 1, and the Superintendent had not nominated a principal. These two decisions construe Sec. 4399a-7, Kentucky Statutes of 1930, which has since been repealed. Its counterpart is now KRS 160.130, which applies solely to the present method of selecting and employing teachers in elementary schools of subdistricts. The opinion of Smith v. Powell, supra, decided that the Sec. 4399a-7, when it was in full force and effect, curtailed the right of a county superintendent to make recommendations of teachers and other school employees only as to grade schools in subdistricts, just as KRS 160.130 now does.

We cannot regard seriously appellees' insistence that Smith should have previously established his right and claim to the office of principal of the high school for the term in question by a direct proceeding to a court of competent jurisdiction. This is an attempt by analogy to compel teachers and other school employees to proceed as a discharged municipal worker must do, who, under a special law applying to his case, is required to resort to court action to have his right to his position determined before he can be reinstated on his job.

In our opinion the law is clear that Smith's rights accrued to him when he was recommended by the Superintendent. Appellee Board Members could reject him only if he were morally unfit or educationally disqualified. Their independent action in employing the substitute principals and paying them school funds for the term 1947-48 make them liable as individuals, jointly and severally. The substitute principals are also individually liable for the money had and received by each of them as illegal employees, if they had

knowledge of Smith's nomination. The lower court erred in sustaining the motion and the demurrers of appellees. The judgment is reversed for proceedings consistent with this opinion.