CASE 98—ORDINARY—OCTOBER 3, 1881.

# Rudd v. Matthews.

### APPEAL FROM UNION CIRCUIT COURT.

1. A party who sees an obligation with his name signed to it without his authority or consent, yet tells the obligee that the signature is his and he is bound by it (the representation resulting in the obligee forbearing to sue until the principal becomes insolvent) will be estopped to say afterwards that it is not his act and deed.

2. Reason and the policy of the law forbid that a party who is apparently an obligor should assert that he is such, and bound by his obligation, and afterwards escape the debt by his plea of *non est factum.*

SPALDING & SPALDING AND W. LINDSAY FOR APPELLANT.

To make out an estoppel *in pais* it must be shown—1. That the party sought to be estopped has made an admission or done an act with the intention of influencing the conduct of another. 2. That the other party has acted upon, or been influenced by, such act or declaration. 3. That the party will be prejudiced by allowing the truth of the admission to be disproved. (Washburn on Real Prop., 74; 30 N., 541; 102 Mass., 201; 27 Wis., 566; 49 N. Y., 111; 38 Ills., 145; White & Tudor's Lead. Ca., part 1, vol. 2, 30; 18 Wall., 271; Sneed's Rep., 102; McAdams v. Howes, 9 Bush, 23.)

S. B. VANCE AND D. H. HUGHES FOR APPELLEE.

1. The alleged errors of the court relied upon for a new trial must be specified.

2. Appellant is estopped to deny his responsibility upon the note. His representations to appellee caused him to forbear to sue until the principal was insolvent. (Forsyth v. Banta, 5 Bush, 47; 63 Ills., 403.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This appeal is from a judgment rendered in the Union court of common pleas in an action by the appellee against the appellant and others on a note for five hundred and seventy-six dollars.

The note is payable to the appellee, and was executed by A. G. Robinson as principal, and purports to have been

executed by the appellee Rudd and his co-obligees as the sureties. Robinson, the principal, died in February, 1879.

The note was dated on the 28th of May, 1878, and made payable in twelve months thereafter, and this action was instituted upon it in about twelve months after its maturity. The defense relied on by the sureties was the plea of *non est factum*, and the appellee, to avoid this defense, pleaded an estoppel as to the defendant Rudd, in substance as follows:

He alleged that after the execution of the note, and while Robinson, the principal, was living, and with ample property subject to execution to have satisfied the debt, the defendant Rudd told the plaintiff he had signed the note and would remain bound until it was discharged; that relying on these admissions and the promises of the defendant, he failed to take any legal proceedings in order to make his debt out of the principal; that other creditors in the meantime collected by legal proceedings, about that time and shortly after, several thousand dollars on their claims out of the property of his principal, and that his debt could or would have been made or secured but for the representations and statements made by the appellant that his signature to the note was genuine.

There is no direct averment that in making the admission it was the purpose or intention of the appellant to mislead the appellee, or that the latter should act on the statement made; still the appellant, in his rejoinder, avers that the admissions were not made with the intention or purpose of inducing the plaintiff to forbear to sue or to treat the note as not due; that he intended no wrong or fraud on plaintiff. To this rejoinder the appellee says that the defendant acknowledged his signature to be genuine and promised to pay

Rudd v. Matthews.

the note; and thereby the plaintiff was lulled into security, and caused him to forbear to resort to legal remedies for the collection of his debt, &c.

There was no demurrer to any of the pleadings, and we think the issue was properly presented when considering the entire pleadings filed by each party.

The testimony conduces to show that Robinson had been using the names of his friends on his paper without any authority, and that the appellant called on the appellee to know what had become of a $1,000 note he held on Robinson, and for which he was bound as surety, and was told by the appellee that the note had been paid. He was at the same time informed by the appellee that he held this note in controversy on Robinson, for which he was bound as surety, and appellant responded that it was all right; and it seems in a short time after this, at his instance, the note was handed to him for inspection, and he said it was his signature and proposed to make some arrangement to pay it. His recognition of his liability is also shown to have been admitted by him in various ways.

It seems that Robinson had signed appellant's name as surety to certain county bonds without any authority, and when examining these bonds he pronounced them forgeries, and said the only note he was on as surety was a note to the appellee for five hundred and fifty or sixty dollars. The proof of the admissions and representations made by the appellant, as shown by the testimony of the appellee, is corroborated by appellant's own testimony. He says he did admit he signed the note, but that he was often in such a condition, when under the influence of liquor, as to prevent him from comprehending the nature of business trans-

actions, and when he made the admissions he had reference to some other note for a smaller amount for which he was liable.

The appellant is an illiterate man, and can only write his name.   His clerk in a drug store owned by appellant testifies that the signature of appellant is not genuine, and the same statement is made by others familiar with his signature. The decided weight of the testimony as to the signature is that it is not genuine.

The jury made various special findings in response to interrogatories propounded by the court at the instance of counsel, and also returned into court a general verdict for the appellee.

The special finding for the plaintiff (*appellee*) was: "We, of the jury, find that the defendant, in interviews with the plaintiff, before the maturity of the note sued on, was informed by plaintiff of the amount of the note, and about the time of its date, and that his (defendant's) name was to said note as the surety of Robinson, and that the defendant admitted his signature thereto was genuine, and agreed to pay it or see it paid; and the defendant relied on the promise and admission as true, and forbore to take action against Robinson, whereby he could have made or secured said note, had defendant disclaimed his liability thereon.

The special findings for the defendant were:

1. That he did not sign the note, or authorize any one to sign it for him.

2. That defendant made said admissions and promise in ignorance of the fact that his name on the paper was not his genuine signature.

The defendant entered his motion for a judgment on the special findings, and the motion was overruled.

Rudd v. Matthews.

The only question presented in the record necessary to be considered arises on the special finding to the effect, that when the admissions were made the appellant was mistaken as to the genuineness of the signature and his liability for the debt.

It is insisted by counsel for the appellant—

1. That the rule is: "The person sought to be estopped has made an admission or done an act with the intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, inconsistent with the title he proposed to set up."

2. "That the other party has acted upon, or been influenced by, such act or declaration that the party will be prejudiced by allowing the truth of the admission to be disproved."

These rules are recognized in the elementary books, and we see no reason for denying their application in a case like this. That the appellant, when he made the admissions as to his signature, had reason to believe that it would influence the conduct of the appellant, is evident, and that he made the admissions for the purpose and with the intention of quieting his apprehensions as to the security for his debt, is equally certain; and being satisfied with his security, as the jury find and as the evidence conduces strongly to show, made no effort to collect his debt of Robinson, whilst other creditors were proceeding to realize by legal process the payment in full of their demands.

In this case the note was signed when delivered by the principal obligor to the appellee, and relying on the integrity of the former, he accepted the note and loaned his money. When the liability of the surety was questioned, his only mode of ascertaining the facts upon which he could rely

was to see the surety, and when informed by him that his
signature was genuine, he had the right to look to him for
payment; and when trusting as to the truth of the admis-
sions and promises made, he has indulged the principal, or
failed to take coercive measures to collect his debt, when it
could have been made, the surety should be denied the right
to disprove the truth of his own statements, so as to avoid
liability.

The representation was made that it might be acted upon,
and to assure the plaintiff at least that his note was genuine.
It is certain from the proof in the cause and the finding of
the jury that the appellee acted on the representations and
admissions made by the appellant, and that this action,
influenced by the conduct of the appellant, caused him to
lose his debt.

In the case of Casca Bank against Keene, 53 Maine, it was
adjudged that one who adopts a signature, knowing it to be
forged, is estopped from denying its genuineness. In the
case of Heffern v. Dawson, 63 Illinois, the proof showed
that the surety, by his admissions and declarations, "*the
note was all right, and if the plaintiff would hold still, he
would pay him,*" authorized the conclusion that the surety
designedly induced the plaintiff to omit to take measures to
collect the same from the other maker when he was solvent.

In the case of Forsythe v. Burton, 5 Bush, this court
went so far as to say that a mere ratification of an unau-
thorized signing of a party's name to a note as joint obligor
works an estoppel. While the mere ratification of a void
contract may be regarded as without any consideration, and
the soundness of the rule laid down in Burton v. Forsythe
properly questioned, still in the case before us there is not

Rudd v. Matthews.

only a ratification but an express admission that the signature to the note was that of the surety.

Under our present statute, the authority to sign the name of one to a note as surety must be in writing, and in Moxley v. Ragan this court held that proof of a promise to pay by the surety, when the note was signed without authority, would lead to the same evil that the statute was intended to remedy, and therefore held the testimony incompetent, and the promise not obligatory. In that case, if the party had admitted his signature was his own, the question would have been entirely different.

It is argued here that the proof of the many recognitions by appellant of his liability and the genuineness of his signature indicates a persistent effort to entrap appellant so as to fix upon him a liability as surety. This might be, but for the special finding and the testimony of the appellant himself. He says, ''he recollects to have had the note in his hands, and looked at it, and perhaps had other conversations when the note was not exhibited, and in some of the conversations might have told plaintiff his name was on the note and the signature was his; that he had signed it or put it there, and the note was as good as the bank.''

He further says he thought the note was for $250. It was proven by the appellant on the trial and a number of witnesses that it was not his signature, and why he did not know that fact when the note was produced to him, and when he was investigating the forgeries committed by Robinson, is left unexplained, unless he was too much intoxicated at each conversation to know the effect of his conduct and action. It is argued, however, that the jury, by their special finding, have determined that when he admitted the signing of the note he did so under a mistake as to his own

signature ; and if acting in good faith, as the special finding; establishes, he is not liable.

Ordinarily there must be a purpose or intention to deceive: or mislead so as to work an estoppel.    '' It is not necessary,. in order to create an equitable estoppel, that the party should design to mislead.    It is sufficient if the act was calculated to mislead, and actually has misled a person acting upon it. in good faith, and who exercised reasonable care and diligence under all the circumstances, and effectually estops the party from averring a state of facts different from what the party acted upon.''    (Hermann on Estoppel, page 418.)

''It seems to be settled that a party's ignorance of the truth of the representation made will not remove the estoppel, if he was bound to know the fact, or if his ignorance is the result of his gross negligence.''    (Bigelow on Estoppel,. 476.)

Now the appellant is presumed to know his own signature, and the holder of this note, when put upon inquiry as. to its validity, and in the exercise of the utmost diligence, has gone to the party, and the only party whom he had the right to suppose could speak the truth as to the existence of the fact he was endeavoring to ascertain.    He saw the appellant, and was informed by him that the signature was. genuine.    This, as the jury have found, induced him to forbear to sue, and to rest quietly as to the appellant's liability. Now, after such acts and admission, is not the appellant in good conscience, law, and morals estopped to plead *non est* *factum* to the paper?    We think he is.

Parke, B., says, in discussing this question, ''and if, whatever a man's real intention may be, he so conducts himself that a reasonable man would take the representation to be true, and believe that it was meant he should act upon it,.

and did act upon it as true, the party making the representation would be equally precluded from contesting its truth." (See note 1, page 487, Bigelow on Estoppel.)

The party must mean his representation to be acted upon, and when it is acted upon, as in this case, and works an injury, the party making the admission is estopped to deny the truth of his own statement. The facts of this case show that appellee was influenced to rely on the ability of the appellant to pay, and that his forbearance to sue the principal was caused by the admissions made; that appellant purposely caused the appellee to look to him for payment upon promises made to pay the debt, and his acknowledgment time and again that his signature was genuine.

Judgment affirmed.