# Embry v. Long et al.

(Decided June 19, 1934.)

(Rehearing Denied Nov. 27, 1934.)

JAMES P. GREGORY and GROVER G. SALES for appellant.

GORDON, LAURENT & OGDEN and R. F. MATTHEWS for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellant, H. W. Embry, sold an apartment house to M. Raff for $41,500, agreeing to make the conveyance to whom he directed provided he would sign the notes for the deferred portion of the purchase money. Raff sold the property to the Consolidated Realty Company. In order to avoid publicity of its purchase, C. C. Hieatt, its president, requested that the deed be made to S. M. Long, Jr. He was a resident of Shelby county and an intimate friend and a relative by marriage of Hieatt. Just before or after Embry made the deed, Hieatt told Long that he would like to take, or had taken, a deed to some property in his name and

Long consented. It is probable that the deed had already been made and the transaction closed. Nothing was said at any time about the details or what the terms of the conveyance were except Hieatt told Long "* * * we were paying one-third or more in cash and giving notes for the balance." The evidence as to just what occurred is uncertain because of naturally hazy memories after a lapse of six years. But it is certain nothing was said about Long signing, or that he had signed Long's name to any notes.

The deed was made on October 21, 1926, to Long as grantee. Five notes for an aggregate of $29,000 were given Embry. They bore the names of Long and Raff. In form they were the individual notes of Long with Raff as surety. As subsequently developed, Long did not sign the notes nor authorize any one else to sign his name to them. Hieatt had signed Long's name. It was some time after this suit was filed on three of the notes, amounting to $20,000, before either Embry or Long learned of this. We think it may be safely said that if Embry did not know in the beginning, he learned during the intervening period that the realty company was the owner, for during that time payments were made of both principal and interest by it and other transactions relating to the property were had. Embry admits that he was not much concerned about his notes for it appeared that the property was of ample value and he knew that Raff was financially responsible. He says he also relied to a certain extent on the obligation of the realty company.

After a time, this suit was instituted by Embry against Long, Raff, and the realty company on the three unpaid notes and for the enforcement of the vendor's lien. An amended petition again set up that the notes were given as part of the consideration for the property and that in the resale to the realty company it had assumed the payment of the respective sums as part of the consideration for its purchase. The property was sold by order of court and purchased by Embry for $20,500. However, taxes, penalties, and court costs amounted to over $5,000, so that when they had been satisfied, there remained a deficit of about $5,500, for which personal judgment is sought against Long.

Long pleaded non est factum and ignorance of the terms of the deed and of the whole transaction. He

likewise set up as discharging him an agreement made before the judgment for the sale of the property between Embry and Raff, whereby the latter was released from liability as surety on the notes in consideration of the payment by him of $1,000 in cash and notes for $4,000 secured by a second mortgage on certain property.

Section 3720b-19, Statutes, requires that the authority for an agent to sign one's name to a negotiable instrument must be in writing, and section 3720b-23 declares that:

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

The word "precluded" is synonymous with estopped. Basket v. Ohio Valley Banking & Trust Company, 214 Ky. 41, 281 S. W. 1022; Citizens' Union National Bank v. Terrell, 244 Ky. 16, 50 S. W. (2d) 60. It is apparent, therefore, that Long's plea of non est factum must prevail unless he is estopped to make that defense by his actions, which are submitted in the pleadings and in appellant's argument as having that effect.

It appears to have been a practice of the realty company to take property purchased for itself in the name of an individual and have it reconveyed to the company and the deed withheld from record. About six months before the present transaction, three such conveyances were taken in the name of Long as a matter of accommodation, and in each there were lien notes for part of the consideration. However, in each instance Long had personally signed the notes. There is too wide a difference between transactions of that sort and this one to create an estoppel. There is a far different state of facts and course of conduct. The conclusion might reasonably be the converse, for having signed the notes in three instances, Long could not assume that he would be or had become obligated in a fourth without his signature. It is not unusual for the conveyance of

property to be made to one person and the notes of a third person be given as part of the consideration. But the appellant submits that Long knew of the practice of the company buying property and giving notes for part of the purchase price, hence he should have made inquiry as to what would be done in this instance. There is nothing to show any knowledge of such a practice as was followed here or, indeed, that there had ever been any other such unwarranted procedure.

Let it be conceded without decision that knowledge of the contents of the deed was imputed by law to Long by reason of the authority given Hieatt to take title in his name. The suit seeks a recovery of a personal judgment on the obligation of the notes and not upon the terms of the deed. The only question is whether Long was or is estopped to deny liability on them. Was he under any duty to speak up and notify the vendor that he did not sign those notes nor authorize anybody else to do so? He knew he did not sign them. He did not know that his name had been put to them by another without authority. It is a fundamental factor in cases of estoppel that ratification of an unauthorized act of an agent to be made binding on a principal must have been done with a full knowledge of all the material facts, and if they have been suppressed or unknown, the ratification is treated as invalid. Ky.-Penn. Oil & Gas Corporation v. Clark, 247 Ky. 438, 57 S. W. (2d) 65. "Ratification implies knowledge, and without knowledge there can be no ratification." War Fork Land Company v. Marcum, 180 Ky. 352, 202 S. W. 668, 670. The foundation of the doctrine of estoppel by silence is punishment for fraud and that not constructive or legal but actual fraud. "The quo animo must be enquired after." Morrison's Executor v. Caldwell, 21 Ky. (5 T. B. Mon.) 426, 17 Am. Dec. 84; Rudd v. Matthews, 79 Ky. 479, 42 Am. Rep. 231; Advance Thresher Company v. Fishback, 157 Ky. 427, 163 S. W. 228. Remaining passive does not ordinarily deprive a person of his legal rights unless in addition thereto he does some act to induce or encourage another to alter his condition and thereby it becomes unconscionable to award him those rights. C. & L. Railroad Company v. Bowler's Heirs, 72 Ky. (9 Bush) 492. In Shaw v. Farmers' Bank & Trust Co., 235 Ky. 502, 31 S. W. (2d) 893, 895, it is written:

"Silence, to work an estoppel, must amount to bad faith, and this cannot be inferred from facts of

which the person sought to be estopped has no knowledge.''

See, also, Reid's Adm'r v. Benge, 112 Ky. 810, 66 S. W. 997, 23 Ky. Law Rep. 2202, 57 L. R. A. 253, 99 Am. St. Rep. 334; Kenyon Realty Company v. National Deposit Bank, 140 Ky. 133, 130 S. W. 965, 31 L. R. A. (N. S.) 1169; War Fork Land Company v. Marcum, supra. Looking to the particular application of the law, it cannot be said that mere failure to disavow a forged signature is an adoption or ratification of it. Annotation, 25 A. L. R. 177. It is pertinently said in 10 R. C. L. 810:

> ''Where the name of the maker or indorser of negotiable paper has been forged, and the holder has been misled to his prejudice by the conduct or promises of the person whose name has been forged, the latter will be estopped from pleading that the instrument is not genuine. * * * Mere silence when a forged signature is shown to the person named as maker of a note will not operate as an estoppel unless the holder has been damaged thereby, but an alleged maker may become liable by failure to repudiate, where by such action he has caused the holder of the paper to suffer damage and loss, and a party appropriating any benefit from the use of forged paper cannot thereafter repudiate his alleged signature.''

Another primary and essential element to the enforcement of the rule of estoppel is that the adverse party must have relied upon the conduct or representation of the other and thereby been prejudiced or induced to change his position for the worse or to suffer some injury of a substantial character by reason of having been thus misled. Bush v. Chenault's Executor, 175 Ky. 598, 194 S. W. 777; Lisle's Adm'rs v. Oliver, 181 Ky. 829, 205 S. W. 954. It does not appear that Embry relied upon any conduct or omission of Long or even upon his apparent signature. He seems to have known at all times that the realty company was in fact the owner of the property and, as we have stated, to have relied upon the security of his paper independent of Long's apparent liability. From time to time he negotiated and agreed with the realty company alone to extend the time of payment without any communication with Long. He made no attempt to communicate with him until after

suit had been filed. His only previous efforts were in September, 1929, when his attorney wrote two letters addressed jointly to the realty company and Long, and mailed them to the company's office, with which Long had no connection whatsoever, complaining that the notes were overdue and not paid. Long never received or knew of either communication. Embry's confidence all along was in the value of the property and the solvency of Raff and the realty company whom he knew and not in Long whom he did not know.

We concur in the conclusion of the chancellor that no cause of action was sustained as against Long and therefore the judgment is affirmed.