# Wisdom's Adm'r v. Sims, County Superintendent of Schools, et al.

## Dickenson v. Same.

## Meadows v. Same.

Oct. 25, 1940.

J. C. Carter, Judge.

L. C. Lawrence for appellants.

Lilburn Phelps, E. C. Moore and Louis Cox for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

This is an appeal from a judgment of the court of first instance, whereby the chancellor sustained a demurrer to a reply of plaintiff, and upon refusal of plaintiff to plead further on the involved issue, dismissed the petition.

In the three separate suits instituted below the parties plaintiff were Delphia Wisdom, L. T. Dickenson and Gladys Meadows. The defendants were the County Superintendent of Schools of Russell County; the members of the County Board of Education, as then constituted, three members of the board being proceeded against individually because of the contention that their activities in the premises contributed to the damage to plaintiffs (appellants) for which they individually sought redress. The Wisdom case is now prosecuted by her administrator.

These three cases have not been consolidated, nor by order directed to be heard together, but since it appears from the record in each case the matter in dispute is common, based upon the same character of pleadings, orders and identical judgments, we shall consider them together, and in discussing the cases we shall make reference to the Wisdom v. Board, Sims and Loy appeal; the others may be mentioned incidentally.

In order to reach the one question presented for our consideration it will be necessary to discuss generally, not in detail, the movements which brought about the litigation.

Mrs. Wisdom, admittedly qualified, prior to April 11, 1938, filed application with the Superintendent of Schools in Russell County, for the position of first grade teacher in the Jamestown Graded and High School. Story, the then Superintendent, on April 11, recommended her for appointment, as he did later, on June 13, of the same year. At that time the county board, due to a vacancy, consisted of only four members. At the April meeting a vote resulted in a tie, members Antle and Richards voting against her. On June 13, her name was again presented, with the result that her application was rejected. Kinnett in the meantime had been appointed to fill a vacancy, and he joined with the two above named in refusing to sanction the selection of appellant.

On July 1, 1938, Sims was elected to succeed Story, and on August 2, at a called meeting of the board he substituted for Mrs. Wisdom and others the names of the three teachers, appellees, who were elected, and this brought about the controversy. The teachers who were appointed at the August meeting, entered upon their duties for the school year 1938-39, and had taught for seven months of the period when Mrs. Wisdom and the others instituted suits, contesting the right of the board to make the appointments, and the rights of the alleged substituted teachers to continue to teach, draw pay, or the board to pay.

They sought injunction against the alleged substituted teachers from further teaching or drawing salary, and asked that they be required to pay to each the sums they had received for the period of their teaching, and that the board be enjoined from making further payments; or the board be required to pay them the scheduled salaries for the seven months taught by the defendants, and for instatement and pay for the two months. As against the individual members of the board who had originally and later voted to reject their applications, they asked personal judgments.

It is not necessary in the state of case before us to minutely set out or analyze the extensive pleadings, except in one respect. Each of the petitions by the teachers who were not employed, set out the facts as we have thus far given them, and then plead that under the law, as construed by this court, it was the duty of the board

to sanction the recommendations of the county superintendent, in which duty they had failed. In the Wisdom case Mayme Loy was alleged substituted teacher.

The board, as such, and the alleged recalcitrant members, Sims, the superintendent, and Miss Loy, filed their joint answer denying the charges in a general way, and in an affirmative plea alleged that Mrs. Wisdom's name had been withdrawn prior to the nomination by Sims of the appointed teacher. The point appears to be sharply in issue, as perhaps others were, but certain other pleadings and replications are the only issue we have to consider on this appeal. All defendants, in joint answer, including Miss Loy, plead that Mrs. Wisdom was estopped because of her laches in instituting her action seven months after her application had been rejected, and Miss Loy appointed to the place.

It was contended that Mrs. Wisdom knew of the withdrawal of her application and the application and appointment of Miss Loy; that by her failure to assert her rights prior to the time of the institution of suit she suffered the appellee teacher to enter upon and continue to discharge her duties as teacher, and thus caused the board to incur great and unnecessary expense; further that Miss Loy was by silence mislead into the belief that she had the legal right to teach, otherwise "she would have sought employment elsewhere."

Mrs. Wisdom replied, first denying the material allegations of the answer, and affirmatively plead that Miss Loy had knowledge of the fact that Mrs. Wisdom had been legally recommended by Story, which knowledge she had at the time and during the period of her teaching service. In amended replies she set up matters which are not essential to the discussion of the instant contention, they being in explanation of her delay.

The defendants by way of joint rejoinder denied the allegations of Mrs. Wisdom's replies. Miss Loy, who had joined in the answer with the board, superintendent and individual members, later filed a separate pleading in which she denied the material allegations of the original petition, but did not in this amended pleading raise an issue on the plea of laches. There were other and numerous pleadings by the various parties, not necessary to be now considered.

At this point it may be well to note that, as the rec-

ord shows, the cases were sharply plead; each and every pleading of all the parties received denials, and in most instances some affirmative pleas; some were by agreement controverted. There were demurrers to all pleadings; motions to strike and, perhaps, other dilatory pleas, which, except in the instant later noted, do not enter into discussion. In some instances it is charged that certain allegations were not denied, therefore admitted by demurrer. We need not discuss these claims or charges made in briefs.

When the petition was filed plaintiff secured from the circuit clerk a temporary restraining order directed to the board, and the alleged substituted teacher, ordering the board to refrain from making, and the teacher from accepting, further payments until the court should otherwise direct. This order was entered March 15, 1939, and apparently was effective until the order of March 1, 1940, dissolving upon motion of Miss Loy.

None of the demurrers or motions which we have mentioned above were considered by the chancellor, or if so none was passed on until Miss Loy's motion to dissolve.

As will be noted from a reading of the judgment, infra, the only question apparently considered by the chancellor, was the sufficiency and effect of the demurrer of Miss Loy to Mrs. Wisdom's reply. In order to make clear, if possible, the sole issue passed on, we insert the judgment, which, if it had not directed dismissal of plaintiff's petition, would as a whole be interlocutory. Identical orders, with change of parties' names, were entered in the other cases.

"The court after reconsidering the demurrer to plaintiff's reply to the plea of laches, filed by the defendant Mayme Loy is of the opinion that the demurrer of said defendant should have been sustained instead of being, by a former order overruled, so far as it applies to said defendant, that the plea of laches, plead by defendant, Mayme Loy, is fatal to the plaintiff's cause of action against her. The plaintiff declining to plead further and electing to stand by her reply, the court upon his own motion adjudges that plaintiff's petition be dismissed as to this defendant, but not as to the Board of Education, and that plaintiff take nothing from said

defendant, Mayme Loy, thereby, and it is ordered that the restraining order issued herein, so far as it enjoins the defendant, Board of Education from paying Mayme Loy the amount due her as teacher, is now dissolved so far as it applies to defendant, Mayme Loy, and it is ordered that the Board of Education * * * pay to Mayme Loy $371.05, the amount due her for teaching in the Jamestown Graded and High School, which has been withheld by them by the restraining order sued out herein. To all of which plaintiff objects and excepts and prays an appeal to the Court of Appeals, which is granted according to law.''

In reading the briefs filed for the contending parties, we find that counsel for appellant has filed a well prepared and comprehensive brief touching the merits of the case, and the issues raised by all the various pleadings, while counsel for appellees have applied argument almost altogether on the propriety of the court's ruling on the quality and effect of the pleas of laches, which we conceive is the question before us, in the light of the order, supra.

As we view the judgment the effect of it is to hold in one part that Miss Loy's demurrer to plaintiff's plea of laches in reply should be sustained, rather than by as former order overruled, insofar as it applied to defendant Mayme Loy. Further, that the plea of laches by Miss Loy (joint rejoinder of all parties defendants) was fatal to Mrs. Wisdom's cause of action, thus apparently passing on demurrers to the respective pleadings, insofar as Mrs. Wisdom and Miss Loy were concerned. This ruling did not touch other pleadings in the case, and as we view it had the effect only of taking out of the case pleas of laches.

The judgment speaking for itself manifests an intention on the part of the court not to pass on issues other than the one of laches, which by no means was or is the sole issue presented by the pleadings.

We do not conceive that Miss Loy's claim is based on correct principles of the doctrine of laches, as applied in decisions of this court and courts of other jurisdictions, the basis of which, since it operates as an estoppel, is founded on public policy, which, for the peace of society, requires and justifies the discourage-

ment of attempted enforcement of stale demands, and frowns upon undue and unaccounted for and prejudicial delays in seeking proper relief. Preston v. Jeffers, 179 Ky. 384, 200 S W. 654. It is well settled that if there be delay, it must be such as works to the disadvantage of the one bringing the plea forward. McDowell v. Bauman, 189 Ky. 136, 224 S. W. 641. On the facts presented in Citizens T. & G. Co. v. Peebles Paving Brick Co., 174 Ky. 439, 192 S. W. 508, we found no claim that the action of an intervenor had been barred by limitations, and that by failing to prosecute the suit "with the diligence he perhaps should have exercised" would not alone sustain the plea of estoppel by laches.

In Maryland Casualty Co. v. Dickerson, 213 Ky. 305, 280 S. W. 1106, 1107, we held that delay alone, though unreasonable, without showing loss or prejudice, will not work estoppel, or authorize or uphold the plea of laches. In that case we quoted with approval from opinion in Culton v. Asher, 149 Ky. 659, 149 S. W. 946, and which in turn had quoted with approval our accepted construction of the doctrine as announced in Chase v. Chase, 20 R. I. 202, 37 A. 804, 805, as follows:

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the rights be then enforced, delay becomes inequitable and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but, when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief."

And quoting from McDowell v. Bauman, supra:
"Here it does not appear that any of the parties affected have been prejudiced by the delay. Their positions are the same as they were when the improper payment was first made. Hence the defense of laches is not available either by McDowell or by Bauman."

Appellant seems to argue that such delay as occurred was on the part of the defendants, who he says so prosecuted and conducted their defense as to lengthen the litigation beyond measure. This charge may be true, but is not the complaint as we read the pleadings and briefs; as the pleadings are drawn with the charge and countercharge of laches, and the situation is somewhat confused in considering, if we were inclined, as to which was the innocent party. If the allegations of Mrs. Wisdom, as set out in the petition, be true, then the board and defendant teacher could hardly be looked upon as innocent. Cottongim v. Stewart, 277 Ky. 706, 127 S. W. (2d) 149; Id., 283 Ky. 615, 142 S. W. (2d) 171; Bernard v. Sims, 279 Ky. 565, 131 S. W. (2d) 505. But this question we are not deciding.

In order to create estoppel by laches, the party sought to be estopped must have had knowledge of the transaction in question, and with such must have done something which mislead the other party to his or her prejudice. Kinnett v. Abrell, 275 Ky. 276, 121 S. W. (2d) 699, citing numerous cases. Neither Miss Loy, the board members, nor the superintendent were induced to take and maintain their adopted positions by any act or word of appellant, nor were they prejudiced by her silence.

Silence, or failure to act in order to work estoppel, must be bad faith silence or failure. Shaw v. Farmer's Bank & Trust Co., 235 Ky. 502, 31 S. W. (2d) 893. Here the plaintiff, in a responsive plea, gave what might be considered plausible reasons for delay in ascertaining her rights, and instituting action. Mrs. Wisdom at no time did anything to mislead the board, the superintendent, or the alleged substituted teacher in laying the foundation. As may be noted from a reading of the Cottongim cases, supra, one who has been legally nominated by the proper officer, and whose name has not been legally withdrawn for legal reasons, acquires a vested right to teach, as much so as if the contract had been actually signed. There is some doubt, as we review the pleadings, whether the appellees, defendants below, were in position to raise or insist on the plea of estoppel by laches. Stewart v. Finkelstone, 206 Mass. 28, 92 N. E. 37, 28 L. R. A., N. S., 634, 635, 138 Am. St. Rep. 370.

Remaining passive does not ordinarily deprive one of his legal rights, unless in addition thereto he does some act to induce or encourage another to alter his con · dition, and by reason thereof it becomes unconscionable to award the claimed rights. Embry v. Long, 256 Ky. 266, 75 S. W. (2d) 1036. Mrs. Wisdom's failure to openly disavow the matters which resulted in her claim to remedy for an alleged wrong until she filed her suit, which is not claimed to be barred by limitations, could hardly be construed as ratification. Another element to be considered in the enforcement of the rule of estoppel, is that the adverse party must have relied on the conduct or some representation of the other, and thereby been prejudiced or inducted to change his position for the worse, or to suffer some injury of a substantial character by reason of having been mislead. Bush v. Chenault's Ex'r, 175 Ky. 598, 194 S. W. 777; Lisle's Adm'rs v. Oliver, 181 Ky. 829, 205 S. W. 954, and the Embry case, supra; Dalton v. Shelton, 267 Ky. 40, 101 S. W. (2d) 208. Another rule which might become applicable, is that where as a result of another's wrong, one of two innocent parties must suffer, loss should fall on the party whose neglect enabled the wrong to be accomplished. Anglo-American Mill Co. v. Kentucky B. & T. Co., 243 Ky. 124, 47 S. W. (2d) 951.

Without carrying the discussion further, we are of the conclusion that the court was in error in sustaining the demurrer to plaintiff's reply to the plea of laches filed by the defendant Miss Loy; in holding that the plea of laches by Miss Loy is "fatal to plaintiff's cause of action"; and in dismissing the appellant's petition.

It being apparent that the ruling of the court on demurrer was the sole basis of his order of dismissal, the judgment is reversed, with directions to set aside the orders overruling plaintiffs' demurrers to the pleas of laches, and dismissing the petitions, in each of the above styled cases, and for proceedings consistent herewith.