## Fidelity & Deposit Co. of Maryland v. McComas' Adm'r.

Nov. 23, 1943.

F. A. Harrison for appellant.

R. L. Vincent for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

On September 17, 1927, the appellee, Owen O'Banion was appointed administrator with the will annexed of the estate of John McComas, deceased, and executed

bond in the sum of $20,000 with the appellant, Fidelity and Deposit Company of Maryland, as his surety. At the time of the execution of the bond, R. L. Webb was local agent for the surety company and also county judge of Grant county, Kentucky. Appellee paid the initial annual premium of $70 and the bond provided for a further annual premium of $46.67 thereafter, payable in advance as long as liability under the bond shall continue and until evidence satisfactory to the company of the termination of such liability shall be furnished to it at its home office in the city of Baltimore. Appellee paid the annual premiums due September, 1928 and 1929, respectively, which kept the bond in force until September, 1930. In August, 1930, Mrs. McComas, widow of deceased, told appellee that she did not see the necessity of paying out any more money for a bond, since appellee owned property worth more than $20,000 and suggested that they discontinue the bond. This conversation took place on the street or in front of the bank in Williamstown, and about that time appellee saw R. L. Webb, county judge and agent for the company, and called him and the conversation was repeated in his presence and Webb said: "You can still hold the bond, or you can let it go, it is just with you all." At about that time or soon thereafter, the county court clerk of Grant county wrote appellant a letter or a statement of some nature stating that on August 11, 1930, appellee, as administrator, had filed his final settlement which was approved by the court and an order had been entered discharging appellee as administrator. The premium due September, 1930, and subsequent premiums were not paid, and appellee received no statement or notice from either appellant or its agent, Webb, and apparently all parties treated the bond as having served its purpose and that there was no further liability thereon.

It is admitted, however, that no final settlement of the estate had been made by appellee as administrator, and no order of court entered releasing him or his surety from further liability on the bond as stated in the letter or statement of the clerk and appellee continued to serve as administrator of the estate without bond until about the year 1941 when some of the heirs of decedent's estate demanded or requested that he be required to execute a bond, whereupon he executed a new bond with the American Bonding Company as his surety. These developments brought about an investigation of the rec-

ords and it was developed that while there had been some partial settlements filed by appellee no final settlement had been made, nor any order entered by the court discharging appellee or his surety from liability on the bond. A suit was pending to settle the estate and in 1942 the appellant filed its intervening petition to be made a party, in which it set out the execution of the bond, the payment of the first three premiums and other facts, and further alleged, in substance, that by the letter received from the county court clerk it had been misled and induced to believe that a final settlement had been filed and approved by the court and an order entered by the court discharging it from further liability on the bond. It further alleged that since it had not been released or discharged from liability on the bond its liability continued from the date of the execution of the bond in September, 1927, to the time the new bond was executed in 1941, and asked that it recover of appellee as administrator of the estate of decedent the sum of $513.27, the aggregate sum of the premiums on the bond from the payment of the last premium to the date of the execution of the new bond in 1941.

Appellee filed his answer denying the material allegations of the petition, and in paragraph two he alleged that R. L. Webb, agent for the intervening petitioner, was also county judge of Grant county, Kentucky, at the time of the execution of the bond, and that in September, 1929, when he paid the last premium on the bond, Webb, as agent for the company and as county judge of Grant county, at the request of Florence Mc-Comas, widow of deceased, advised appellee that it was not necessary to renew the bond by paying any further premiums because, since he owned more than sufficient property to pay the bond and advised him that he would notify appellant company that there would be no further premiums paid and that he would have the bond cancelled; that on September 17, 1930, a statement was furnished to appellant by the clerk of the Grant county court in accordance with agreement of Webb as agent of the company and as judge of the Grant county court, advising appellant that it was not further liable on the bond and that he had no further communication from appellant company in regard to the payment of annual premiums or otherwise, and that no demand was ever made on him for any premium and that all parties under-

stood that appellee was under no bond as administrator and treated the bond as cancelled, but did not allege that a final settlement had been made or any order of court had been entered releasing him or appellant from liability on the bond. Appellant filed its demurrer to paragraph two of the answer of appellee, which demurrer the court overruled with exceptions, and after the evidence was taken the court dismissed appellant's petition, to all of which appellant excepted and prayed an appeal which was granted.

Appellant took the evidence of appellee as if on cross-examination. He testified concerning the conversation between himself, Mrs. McComas and R. L. Webb, and other facts substantially as we have stated above. He admitted that he had never made any final settlement and so far as he knew no order had been entered releasing him or appellant, as surety, from further liability on the bond, but it was his understanding that all parties concerned considered the bond released. He said that Webb, county judge and agent for appellant, never at any time notified him or called on him to pay any further premiums on the bond and the reason he executed a new bond was because one of the heirs complained because he was under no bond and then Judge Chipman, the present county judge, required him to execute the new bond in 1941. The evidence of Harold C. Hedger, a deputy county court clerk, was taken and, testifying from the records of the office of the county court clerk, he stated that on September 17, 1927, appellee executed a bond as administrator of the estate of John McComas, deceased, in the amount of $20,000 with appellant as surety. He said the bond was signed "J. W. Webb, vice-president, attest R. L. Webb, assistant secretary," but his evidence sheds no light on the issues involved. R. L. Webb died sometime before the institution of this action. The evidence of the county court clerk who was in office in 1930, when the letter referred to above was written to appellant, was not taken. It was stipulated that there were two or three partial settlements made by appellee but no final settlement made between the times the two bonds were executed.

We have seen that there is no issue of fact presented and the only question involved is one of law. Since appellee had filed no final settlement or account-

ing, nor any order of court having been entered releasing and discharging appellant as surety on the bond, it follows that the bond and appellant's liability thereon continued from the date it was executed in September, 1927, until appellant has been released from liability thereon in the way and manner provided by law and according to the terms of the contract. So far as this record discloses, R. L. Webb was only a soliciting agent for appellant company rather than a general agent possessed with power to bind the company in releasing it from the bond or waiving payment or premiums. It is incumbent upon a person dealing with an agent to ascertain the scope and extent of the agent's authority. In fact, appellee does not contend that Webb was possessed with authority to release him from liability on the bond, and if such contention were made it would be unavailing, since it is the rule that one relying upon agency must not only prove the agency but the extent thereof, which appellee did not attempt to do by either pleading or proof. People's National Bank v. Citizens' Saving Bank of Paducah, 239 Ky. 30, 38 S. W. (2d) 959; General Service Garage v. Lexington Oil Co., 274 Ky. 330, 118 S. W. (2d) 690. In the case of Barker v. Boyd, 71 S. W. 528, 24 Ky. Law Rep. 1389, it was held that where surety desires to be released from liability on a bond, the only manner in which this could be accomplished is to proceed in accordance with the statutes in such cases provided. Carroll's Kentucky Statutes, Section 4659 et seq., now KRS 62.090 to 62.130. The same principle should apply where the principal seeks relief from liability under such bond. It is thus seen that neither the principal nor surety can be relieved from liability except in the manner provided by law. See, also, 24 C. J. 1068, 1070; 34 C. J. S., Executors and Administrators, secs. 957, 958; 50 C. J. 190; Bellinger v. Thompson, 26 Or. 320, 37 P. 714, 40 P. 229. In the Bellinger case it was held that the power of the court to relieve surety from liability is purely statutory. The text of C. J., supra, is to the same effect, adding, however, that a surety on an administration bond remains liable until the termination of the administration, unless he is sooner discharged from liability in some lawful manner.

The entire brief of appellee is devoted to the argument that since it was agreed between himself and R. L. Webb, county judge, and agent, that appellee would pay

no further premiums on the bond and thus treat it at an end, and since appellant received information from the clerk that the bond was no longer in effect and made no further demand for payment of premiums and treated the bond as having been discharged, appellant is now estopped from maintaining this action for the collection of any further premiums. We do not think that the equitable doctrine of estoppel is applicable to the state of facts presented in this record. It is the rule that knowledge of all material facts is essential to ratification by the principal of its agent's unauthorized act, and where the principal is not possessed of such knowledge, it cannot be estopped from repudiating an unauthorized act of its agent. Embry v. Long et al., 256 Ky. 266, 75 S. W. (2d) 1036. Here it is apparent that appellant in good faith relied upon the erroneous statement received from the county court clerk and was lulled into believing that appellee had actually made a final accounting or settlement of the estate and an order of court duly entered discharging the bond and relieving appellee and his surety, appellant, from any liability thereon, and for that reason it failed to make demand on appellee for further payment of premiums. No doubt if appellant had known the true state of facts as they actually existed, namely, that no final accounting had been made by appellee nor any order of court entered of record relieving it from liability on the bond, it would have demanded payment of the premium so long as the liability existed, as provided in the bond. It follows, therefore, that since the bond constituted a binding contract between the parties, appellant is legally bound to comply with the terms thereof; that is, pay the premium so long as liability on the contract was in existence.

Wherefore, the judgment is reversed and remanded for proceedings consistent with this opinion.

Judge Cammack not sitting.