**.AMERICAN SURETY CO. et al. v.
CODELL et al.**

No. 305.

District Court, E. D. Kentucky.

Nov. 2, 1944.

B. R. Jouett, of Winchester, Ky., and Ben L. Kessinger, of Lexington, Ky., for plaintiffs.

D. L. Pendleton, of Winchester, Ky., for defendants.

FORD, District Judge.

The defendants, being the lowest bidders, were awarded a contract by the Louisville & Nashville Railroad Company for construction of a line of railroad for the sum of $1,355,237.30. At the instance of the defendants, the plaintiffs executed a surety bond in the penal sum of $500,000 for the faithful performance of the contract.

The controversy in this litigation is whether the plaintiffs, as compensation for their suretyship, are entitled to recover only $5,000, the amount offered them by defendants, being 1% of the penalty fixed in the bond or the sum of $13,552.37, the amount sued for, which is 1% of the contract price.

It is established by the evidence that 1% of the contract price is the uniform

rate charged by plaintiffs and other reputable surety companies for suretyship upon bonds of the type here involved, regardless of the penal sum fixed in the bond, unless the penal sum is less than 20% of the contract price.

In opposition to plaintiffs' claim, the defendants invoke the equitable doctrine of estoppel by silence, asserting that plaintiffs' agents, by remaining silent at times and under circumstances when it was their duty to inform defendants in respect to the correct charge for the bond, left the defendants under the impression that the charge would be only 1% of the bond penalty or $5,000, and thereby misled the defendants into computing their bid upon that basis, resulting in a corresponding loss to defendants, unless they be protected by the estoppel upon which they rely.

■ To entitle defendants to invoke the doctrine of equitable estoppel, it was incumbent upon them to establish by a preponderance of the evidence that the alleged inequitable conduct of plaintiffs' agents induced defendants to alter their position to their loss or injury. This they have not done.

It appears from the testimony of the defendant W. J. Moore that in order to cover the cost of workmen's compensation insurance, public liability insurance, property damage insurance, social security and the cost of suretyship on their bond, the defendants added 12% to each unit item embraced in their bid. Thus the aggregate remuneration realizable under the terms of their bid amounting to $1,355,237.30 included the sum of $145,204 to cover these items of expense.

It further appears that 10.31% of the remuneration was the estimated cost of the above enumerated expenses, exclusive of the bond. Obviously, if 1% be added to this estimate to cover the expense of the bond (the rate claimed by plaintiffs), defendants' estimate of the total amount necessary to cover the cost of the bond and the other items referred to would still be below the 12% added to their bid for that purpose.

There is nothing in the evidence to show that defendants' estimate of 10.31% of the remuneration was not entirely sufficient to cover the cost of all insurance expenses embraced in the 12% estimate, thus leaving 1.69% or $20,449.56 embraced in the bid to cover the cost of the bond.

It is not shown that defendants would have added to their bid any more than the 12% which was added to cover the several items including cost of the bond, even if they had been fully aware that the cost of the bond would be 1% of the total remuneration.

■ It is thus quite apparent that the contention of defendants to the effect that silence of plaintiffs' agents caused them to embrace in their bid an amount less than sufficient to cover the cost of the bond at the rate of 1% of the remuneration is not sustained by the evidence.

■ Moreover, the testimony shows that defendants were men of many years' experience in transactions of this character and, under the circumstances disclosed, the evidence is insufficient to show that the silence of plaintiffs' agents was with the intent or purpose to mislead, deceive or defraud the defendants in any respect, or that the agents knew or had reasonable grounds to believe that such was or would be the consequence of it.

"Silence, to work an estoppel, must amount to bad faith, and this can not be inferred from facts of which the person sought to be estopped has no knowledge." Shaw v. Farmers' Bank & Trust Co., 235 Ky. 502, 506, 31 S.W.2d 893, 895.

In Embry v. Long, 256 Ky. 266, 269, 75 S.W.2d 1036, 1038, it is said: "The foundation of the doctrine of estoppel by silence is punishment for fraud and that not constructive or legal but actual fraud. 'The quo animo must be enquired after.' Morrison's Executor v. Caldwell, 21 Ky. [426], 5 T. B. Mon. 426, 17 Am.Dec. 84; Rudd v. Matthews, 79 Ky. 479, 42 Am.Rep. 231; Advance Thresher Company v. Fishback, 157 Ky. 427, 163 S.W. 228. Remaining passive does not ordinarily deprive a person of his legal rights unless in addition thereto he does some act to induce or encourage another to alter his condition and thereby it becomes unconscionable to award him those rights."

In Wiser v. Lawler, 189 U.S. 260, 271, 272, 23 S.Ct. 624, 629, 47 L.Ed. 802, the Supreme Court points out the distinction between mere silence and a deceptive silence accompanied by an intention to defraud, and quotes from an opinion of the Court of Appeals of New York [Viele v. Judson, 82 N.Y. 32] to the effect that in all cases holding a party to be estopped by silence "the party maintaining silence

knew that some one else was relying upon that silence, and either acting or about to act as he would not have done, had the truth been told."

Proof is entirely lacking to sustain defendants' contention that plaintiffs' claim is exorbitant, unreasonable or unusual.

Plaintiffs are entitled to judgment for the amount claimed.