**CODELL et al. v. AMERICAN SURETY CO. et al.**

No. 9944.

Circuit Court of Appeals, Sixth Circuit.

June 25, 1945.

D. L. Pendleton, of Winchester, Ky. (George R. Hunt, of Lexington, Ky., on the brief), for appellants.

Ben L. Kessinger, of Lexington, Ky., and Beverley R. Jouett, of Winchester, Ky. (Jouett & Metcalf and J. Ashlin Logan, both of Winchester, Ky., on the brief), for appellees.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

A firm of road contractors, J. C. Codell & Company of Winchester, Kentucky, were successful bidders for a construction contract with the Louisville and Nashville Railroad Company. The contract, dated November 4, 1943, provided for the construction of road beds, drains, tunnels, masonry structure, channel and road changes, required in connection with a single-track railroad line, side-tracks and mine-tracks, for approximately 10.32 miles in Perry County, Kentucky.

The partnership was experienced in contracting; and, before submitting its bid, received from the railroad company complete plans, specifications and estimates indicating the work to be done in units. Inasmuch as a faithful performance bond was required, the partnership, soon after being invited to submit a bid, calculated the cost of the work and communicated with an agent of two surety companies, American Surety Company and New York Casualty Company, concerning the execution of a $500,000 performance bond, required by the railroad company. This bond, of simultaneous date with the contract, was executed in the penal sum of $500,000, and was signed by J. C. Codell for the contracting firm and by E. W. Jouett, attorney in fact for the two insurance companies; but was not approved and accepted by the chief engineer of the railroad company until a week later, November 11, 1943.

The controversy here is whether the sureties were justifiably awarded, by the district court, judgment against the contractors for $13,552.37, that amount being compensation for their suretyship at the rate of one percent on the contract price of $1,355,237.30. The contractors insist that judgment should have been rendered against them for only one percent of the $500,000 penalty fixed in the bond. The district court found that the evidence established that one percent of the contract price is the uniform rate charged by the American Surety Company, the New York Casualty Company, and other reputable surety companies, for suretyship upon bonds of the type here involved, regardless of the penal sum fixed therein, unless such penal sum is less than twenty percent of the contract price.

It was found, also, that the surety companies at no time prior to the submission of their bids informed the contractors, through their agents or otherwise, that the rate of one percent on the contract price would be the charge for suretyship on the bond. It was found, however, that the evidence was insufficient to show that the silence of the agent of the surety companies concerning the amount of the pre-

mium was intended or designed to mislead, deceive, or defraud the contractors in any respect, or that the insurance agents knew or had any reasonable grounds for belief that any such consequence would ensue upon their silence.

The district court found further that, in making up their bid for the work, J. C. Codell & Company added twelve percent to each unit item embraced in their bid to cover the cost of their suretyship bond, together with the costs of workman's compensation, public liability, property damage, and social security insurance, with the result that the aggregate remuneration realizable under the terms of their bid of $1,355,237.30 included the sum of $145,204 to cover the aforementioned items of expense. The court found that the contractors, in making up their bid, estimated that 10.31 percent of the remuneration would cover the above-enumerated expenses, exclusive of the bond, thus leaving 1.69 percent, or, in money, $20,449.56, embraced in the bid to cover the costs incident to the execution of the bond. No evidence was offered to show that the estimate of 10.31 percent would be insufficient to cover the enumerated expenses, exclusive of the cost of the performance bond. A further finding was that the evidence failed to show that the contractors would have increased their bid, even had they been fully aware that the performance-bond premium would be one percent of the total remuneration, or that it would have been necessary for them to increase their bid to avoid loss on account of the item.

The district judge expressly found that the silence of the appellee surety companies, or their agent, pertaining to the charge of one percent of the total contract price as the premium on the bond, did not cause or induce J. C. Codell & Company to embrace in its bid an amount less than sufficient to cover the cost of the bond at the rate of one percent of the remuneration realizable under the contract; and that the appellants were not induced or misled to alter their position to their loss or injury by reason of the silence of the appellees, or their agent.

Finally, the court found that the claim of the bonding companies against the principal contractor for compensation at the rate of one percent of the contract price is neither exorbitant, unreasonable, nor unusual, for suretyship upon a bond of the type here involved. Accordingly, judgment was entered in the sum of $13,552.37, calculated on the basis of one percent on the total amount of the contract price receivable by the contractors for performance of the work undertaken.

The record reveals ample substantial evidence to support the findings of fact by the district court; and, this being true, there would be no point to a discussion of the testimony, inasmuch as this court does not weigh the preponderance of evidence. We find no basis in the proof for the argument of appellants that the findings of fact by the trial court are clearly erroneous; or for the contention that the district court misapplied the law in denying the defense of estoppel.

Established principles of Kentucky law were followed and applied to the facts of the case. In Kaufman v. Kaufman's Adm'r, 292 Ky. 351, 360, 166 S.W.2d 860, 865, 144 A.L.R. 866, the Court of Appeals quoted from Wisdom's Adm'r v. Sims, 284 Ky. 258, 144 S.W.2d 232: "Silence, or failure to act in order to work estoppel, must be bad faith silence or failure. Shaw v. Farmer's Bank & Trust Co., 235 Ky. 502, 31 S.W.2d 893. * * * Remaining passive does not ordinarily deprive one of his legal rights, unless in addition thereto he does some act to induce or encourage another to alter his condition, and by reason thereof it becomes unconscionable to award the claimed rights. Embry v. Long, 256 Ky. 266, 75 S.W.2d 1036."

The opinion in Embry v. Long, supra, quotes the language of Shaw v. Farmer's Bank & Trust Co., supra, 235 Ky. at page 506, 31 S.W.2d at page 895: "Silence, to work an estoppel, must amount to bad faith, and this cannot be inferred from facts of which the person sought to be estopped has no knowledge." [256 Ky. 266, 75 S.W.2d 1038.]

In Kentucky, it has been declared that the foundation of the doctrine of estoppel by silence is punishment for fraud, not constructive, but actual. See Embry v. Long, supra, and cases there cited. In Metropolitan Life Ins. Co. v. Tye, 288 Ky. 750, 754, 157 S.W.2d 274, 276, the statement was made that "it is fundamental there can be no estoppel unless one party's conduct has mislead the other to his prejudice or induced him to change his position for the worse." Owens v. National Life & Accident Ins. Co., 234 Ky. 788, 29 S.W.2d 557; Dalton v. Shelton, 267 Ky. 40, 101 S.W.2d 208; and Wisdom's Adm'r v. Sims, 284 Ky. 258, 144 S.W.2d 232, were cited.

Lingar v. Harlan Fuel Co., 298 Ky. 216, 218, 182 S.W.2d 657, holds that one may not omit to avail himself of readily accessible sources of information concerning particular facts, and thereafter plead as an estoppel the silence of another who has been guilty of no act calculated to induce the party claiming ignorance to refrain from investigating. See also Cox v. Simmerman, 243 Ky. 474, 477, 48 S.W.2d 1078.

Federal decisions are in conformity with statements in the opinions of the Kentucky courts with respect to the doctrine of estoppel. In Wiser v. Lawler, 189 U.S. 260, 270, 23 S.Ct. 624, 628, 47 L.Ed. 802, the Supreme Court said: "To constitute an estoppel by silence there must be something more than an opportunity to speak. There must be an obligation." Cf. Joyce v. Gentsch, 6 Cir., 141 F.2d 891, 896; Grand Trunk Western R. Co., v. H. W. Nelson Co., 6 Cir., 116 F.2d 823, 836; Thompson v. Park Sav. Bank, 68 App.D.C. 272, 96 F.2d 544, 549; Hull v. Commissioner of Internal Revenue, 4 Cir., 87 F.2d 260, 262.

It is well settled that one who invokes estoppel must show that he was misled by the silence or conduct of the person sought to be estopped, and that he relied and acted to his damage upon such silence or conduct. His position must have changed in consequence of his faithful reliance. In Furst & Thomas v. Smith, 280 Ky. 601, 133 S.W.2d 941; and Irvine v. Scott, 85 Ky. 260, 3 S.W. 163, cited by appellants, the element of a changed position, lacking here, was present. No basis for the application of the doctrine of estoppel appears from the facts of this case.

The judgment of the district court is affirmed.